Petition of BRINK et al.

Misc. No. 1533–1951.

United States District Court
E. D. New York.

June 5, 1951.

Kaplan, Axelrod & Jaffe, New York City, for petitioners.

Charles F. Zokvic, Miami, Fla., for respondents Thomas J. Flanagan et al.

John C. Pirie, New York City, for Pan American World Airways, Inc.

Samuel J. Cohen, New York City (Henry Weiss, New York City, of counsel), for Air Line Pilots Ass'n.

BYERS, District Judge.

Hearing on a petition under U.S.C.A. Title 45 § 159, Railway Labor Act, to impeach, vacate, and set aside an award of arbitrators dated April 6, 1951. The petition was timely, having been filed April 16, 1951 (Id.Par.Second).

Hearing was held on May 16, 1951, and brought to light:

A. The dispute has to do with the seniority of Pilots employed by Pan American World Airways, Inc. (to be called Pan American) and so is proper for arbitration under the Act, which is made to apply to carriers by air, § 181.

B. The arbitration was provided for in an agreement between Pan American and its air line pilots as represented by their bargaining agent, the Air Line Pilots Association, International (to be called Association) dated April 13, 1951.

The important provisions seem to be:

That the question for arbitration "stems from a dispute regarding the proper seniority position upon Pan American's * * * list of a certain group of * * * pilot-employees." The question is precisely stated in Paragraph Twenty-Second to be: "What is the proper seniority position and date of employment of each 'subject pilot' on the Pan American System Seniority List?"

It appears that the dispute is between two groups of pilots constituting together the "subject pilots" known as the Northeast and the Southwest Groups, respectively, although they are not so designated in the agreement; but that such is the nature of the controversy appears from Paragraph Sixteenth, which provides for representation by each group. Thus there is no showing of a dispute between the carrier and an employee or group of employees within § 184. However, the parties seem to have proceeded upon the theory that this is deemed to be an arbitration within the design of the Act, and neither urges the right to withdraw because of a mistake in that respect. Indeed the case for the petitioners is that the formalities prescribed by the Statute have not been observed, not that the arbitration itself should be considered as without statutory warrant.

The agreement does not recite that arbitration is to be had under the provisions of Chap. 8 Title 45 U.S.C.A., being the Railway Labor Act., as directed in § 158 (b), but it does specify three arbitrators whose names are stated, instead of the Board. Not all of the other requisites stated in § 158 are embodied in the contract, but since there is attached thereto a stipulation dated March 30, 1951, which provides that the agreement shall be deemed to be amended to conform to the Act, and specifications are set forth in that behalf,

the proceeding can well be treated as the parties evidently intended that it should be, namely, as one governed by the arbitration procedure of the Act.

Acquiescence in that approach raises its own doubts, however, for if the dispute was indeed not between those having the right to animate arbitration processes peculiar to the Act, others, such as employee groups, could not stipulate the Statute into potency any more than they could stipulate jurisdiction in a court. It seems plausible to reason in answer to the foregoing, that since the seniority list, however contrived, is in fact maintained by the employer, the latter may be thought to occupy a kind of vicarious role in the controversy sufficient to justify decision of the motion upon the theory that the provisions of the Act must be thought to apply.

No one disputes that the arbitrators met as the agreement contemplated; that they conducted hearings commencing March 30, 1951, and continuing until April 6, on which day they made and signed their award with one member dissenting whose minority award and opinion were filed April 10th.

If the latter document is understood (and for the sake of stating what the dispute seems to be about, but not by way of making a finding), the subject-matter apparently involves the status for the purpose of seniority, of those pilots in the Northeast Group, who were paid a salary by Pan American during their period of training and before they qualified as pilots and were so carried in the records of their employer. If that preliminary period were to be credited to a given full fledged pilot when he should become such, his seniority would antedate that of other pilots who might be first carried on the company's payrolls simultaneously with his attainment of full status. Seemingly it was the Northeast Group which contained some pilots whose seniority involved pre-pilot status, while the Southwest Group did not.

■ Since the award by a vote of two to one was that the seniority positions of the "subject pilots" known as the Northeast Group is that shown on the "Seniority List of January 1, 1950", annexed to the award; and since the award was stipulated (paragraph 5) to be final and binding, there is no duty resting upon this Court to undertake a review on the merits.

The Act provides in § 159 (Paragraph Third) the grounds upon which an award may be impeached; they are three in number, (a) non-conformity with substantive requirements of the Chapter, or that the proceedings were not substantially in conformity therewith; (b) award not confined to the agreement to arbitrate; (c) effective fraud or corruption by a member of the Board of Arbitration.

The last ground is not presented by this petition. The arguments in the petitioners' brief are directed to:

As to (a) the failure of the arbitrators to take and file a record, as required by § 157(f).

This point is not in dispute factually, for apparently no such record was kept.

The agreement is ambiguous, however, on this subject: Paragraph Seventh provides that the Award and "the written or recorded evidence and argument of the proceedings before the Arbitration Tribunal, certified to by said Tribunal, shall be filed by the Tribunal with the National Mediation Board".

Paragraph Eighteenth provides that "Stenographic record of the hearing proceedings, or any part thereof, may be arranged by either party * * *, or by any pilot; however, the party or pilot requesting such stenographic record shall pay the entire cost thereof, and shall furnish the Arbitration Tribunal with a copy thereof".

Since the agreement in terms provides for the source and payment for a stenographic record which the board (the arbitrators) would file, I can perceive no substance to this objection. It should have been raised either when the proceedings started, or it should have been referred to in the amendatory stipulation of March 30, 1951, if Paragraph Eighteenth was to be changed.

■ There seems to be no provision in either cited section of the Statute touching the cost of a stenographic record, thus

leaving the parties free to make their own agreement, as was done in this case.

The Petition, Paragraph 16, specifies (a) "No transcript or other record of evidence presented at the hearings was made or taken." Their brief refers (p. 16) to "exhibits or documentary proof". Since no particular exhibit or document is mentioned in the Petition, it cannot be said that any issue in respect thereof has been raised.

■ Also (b) that the Board (arbitrators) failed as required by Section 157 (b) to "make all necessary rules for conducting its (their) hearings * * * ".

This assertion, standing by itself, is deemed to be legally insufficient to raise an issue under Section 159, Paragraph Third, of the Act, in that:

There is no specification pointing to any rule which should have been adopted and for failure of which the Petitioners' rights were impaired; there is no indication that Petitioners sought unsuccessfully to induce the arbitrators to adopt any rule or rules whatever.

Moreover, since the requirement, Section 157, Third (b), resting upon the arbitrators, was to make "all necessary rules", there should be a prima facie indication of the respect in which they improperly exercised their function to determine what rules were deemed to be "necessary". The dissenting award and opinion contain no reference to this subject.

It seems clear that, if the Petitioners were not satisfied to proceed under the agreement because of the alleged failure of the arbitrators to adopt rules believed by Petitioners to be "necessary", they could have effectually defeated the arbitration by refusing to participate therein.

Also (probably both (a) and (b) of Paragraph Third of Section 159) the Petition, Paragraph 16(c), alleges a failure to comply with Section 157(b) which requires a full and fair hearing to the parties "by foreclosing over the objection of the petitioners, inquiry into the evidence relating to such issue (namely, that stated in the agreement), rendering its decision without any evidence having been introduced

in support of the conclusions it reached, and by substituting for the (that) issue * * * a wholly different issue * * * ".

The foregoing is expanded in Paragraphs 17, 18 and 19, and is relied upon to impeach the Award.

The award and opinion of the dissenting arbitrator are incorporated by reference in Paragraph 17 of the Petition, and can be consulted to clarify the contentions now under consideration.

For convenience, the separate paragraphs of the Award will be quoted:

(1) "The proper seniority positions and date of employment of those 'subject pilots' known as the 'Northeast Group' is that shown on the Seniority List of January 1, 1950, annexed as an exhibit to the Arbitration Agreement."

The dissent is directed to this paragraph only, and the subject-matter will be commented upon presently.

(2) "The Board finds that the intention of the parties to the Agreement was to confine the subject matter to be arbitrated to the status of the Northeast group, and that the admission of Albert L. Ueltschi as an Intervenor did not broaden the issue, and it is, therefore, without jurisdiction to entertain his claim; it will, therefore, be dismissed without prejudice. The Award is also without prejudice to any other pilots not heard * * *."

The second paragraph represents the unanimous view of the arbitrators, and thus the argument to impeach seems to restrict itself to the rather narrow question of whether it was proper to adopt an existing list of pilots according to the alignment of seniority as therein shown.

Passing for a moment the obvious suggestion that what is really presented is an objection to the Award by those who are dissatisfied with it, instead of impeachment upon statutory grounds, i. e. departure from the stipulations of the agreement, Section 159, Third, (b), it will be found that the heart of the controversy seems to be this:

There was in existence a Pan American Pilots' Seniority List dated January 1, 1950, and as to those between 404 and

600 the arbitration was arranged and the persons to be affected were described as "subject pilots" (Agreement, Paragraph Ninth).

The Award "shall be a list of all 'subject pilots' * * * arranged in their proper relative seniority position upon the Pan American Pilots' Seniority List with the proper date of employment for each such pilot" (Agreement, Paragraph Twelfth).

There had been in existence since June 16, 1945, "The Pan American Pilots' Employment Agreement", which contained complete provisions for establishing and maintaining Pilots' Seniority Lists, which agreement was entered into by the employer and the duly accredited representatives of the pilots' bargaining agent, the Association. That agreement seems to have been supplemented as of January 1, 1950, in respect of the seniority of pilots, by the action of a second seniority board deriving its authority from the employment agreement.

The seniority listing of the Northeast Pilots has been so established, but the subject has continued to cause dissatisfaction to the Southwest Group at recurring intervals since that time. As the result of a ballot taken in June of 1948 within the Pilots Association, negotiations were undertaken with Pan American to amend the agreement (of June 16, 1945) so as "to settle the question of the proper seniority position of the Northeast Pilot Group upon the Pan American Pilot Seniority roster" (Bennett Aff. page 2). Those negotiations having failed, this arbitration was entered into. Apparently the Mediator (National Mediation Board Case No. A–3275) recommended a voluntary arbitration (Flanagan brief, p. 2) as offering the best solution of the controversy.

With this imperfect recital of the background of the dispute, it becomes apparent that the constituency of the seniority list (which was formulated as the result of a meeting of the minds on the part of Pan American and the Association) was so much the cause of difference of opinion, that the arbitrators could scarcely be expected to be blind to its existence.

The criticism of the Award as stated by the dissenting member presents two contentions: First, that the other arbitrators did not realize that they were required to examine into the seniority status of the Northeast Pilots without reference to the existing list, and as though it had never been brought into existence; second, that they misconceived the evidence, and failed to reach the same conclusion as the dissenter.

The latter aspect does not call for any present expression of agreement or otherwise, for such is not the office of the Petition nor the purpose of the Statute.

The ground first put forward is most plausibly stated on page 4 of the dissent, to the effect that the majority, by finding that the seniority positions and date of employment of the "subject pilots" known as the "Northeast Group" are shown on the existing list of January 1, 1950, really did so because of prejudice against what seemed to them a welching by the Southwest Pilots on an agreement reached by approved bargaining procedure; that they thereby attributed to that document the nature of a binding precedent; and in so doing they avoided the performance of their functions as arbitrators under the agreement of March 13, 1951, as supplemented by the stipulation.

The Award discloses no such process of reasoning, and the criticism loses much of its apparent force from that passage in the said opinion which attributed to the neutral arbitrator an initial view that the proceeding should be dismissed on the ground that jurisdiction was lacking (to arbitrate) since the issue submitted related to "matter in collective agreements" between Pan American and the Association, which he deemed to have been determined in the past in final and binding form. The opinion continues, however, to point out, that argument by representatives of both Pan American and the Association induced the neutral member to abandon that original position and to acknowledge that the arbitrators had jurisdiction "to hear and determine the issue in dispute".

As has been related, the proceedings continued from March 30, to April 6, 1951, and it appears from certain of the affidavits and briefs, that no testimony was offered by the Northeast Group to controvert such case as was made by the Southwest Group.

Thus it is clear that the Award as made was to the effect that the present Petitioners had not demonstrated that the Pilots in the Northeast Group should be classified as to seniority upon a basis which would mean that they were not employees prior to being hired as Pilots.

It seems to be complained by the dissenting arbitrator that his colleagues somewhat assigned a burden of proof to these Petitioners. If that is true, it was a mere matter of procedure, and in addition would seem to have been a realistic approach, since the Northeast Group were not complaining of the existing list.

The arbitrators were of course free to write their own list, or to adopt that already in existence if in their judgment it was fair and proper in the light of all that had been laid bare to them, touching the incidence of the employee relationship so far as the Northeast Group was concerned.

I can find nothing in the arguments that have been adduced for the Petitioners to demonstrate that the arbitrators reached their Award by resort to prejudice or in disregard of the evidence submitted to them; nor yet that they did not understand that they were called upon to consider the problem presented to them free from any possible contractual coercion residing in the classification most recently established as at January 1, 1950.

In other words, they made their own classification and announced it by attaching it to the Award. The fact that it was in accord with the existing tabulation of seniority did not constitute the latter something which they deemed to be binding on them, or on the parties to the arbitration agreement.

The averment in Paragraph 20 of the Petition concerning the filing of the agreement, the Award, "and the written or recorded evidence and argument * * *

with the National Mediation Board" is deemed to have been abandoned, since nothing was offered to substantiate it, nor was it discussed in Petitioners' brief; moreover the contrary is shown in Paragraph 11 of the Hogueland affidavit, to which no reply has been made.

The Petition to impeach the Award is denied.

Settle order.