**FARRIS v. ALASKA AIRLINES, Inc.**

Civ. A. No. 2672.

United States District Court
W. D. Washington, N. D.
July 24, 1953.

John Moore Williams and Lyle J. Bates, Salt Lake City, Utah, G. Robert Brain, Seattle, Wash., for plaintiff.

Allen, Hilen, Froude, DeGarmo & Leedy, Gerald DeGarmo and Seth W. Morrison, Seattle, Wash., for defendant.

MURPHY, District Judge.

Plaintiff brings this action to recover damages for alleged wrongful discharge. Before the events giving rise to this action transpired, plaintiff was employed as a pilot for defendant, a scheduled carrier by air. He was a member of the Airline Pilots Association International (hereafter ALPA) and entitled to the benefits of the collective bargaining agreement (hereafter Agreement) then in effect between the defendant and ALPA. That Agreement, in conformity with the Railway Labor Act,[1] contained a provision for the establishment of a System Board of Adjustment, whose function it was to adjust and decide disputes between defendant and any of its pilots, growing out of grievances or out of the interpretation or application of the Agreement.

Upon being discharged in April of 1948, plaintiff demanded that the dispute between him and defendant be submitted to a System Board of Adjustment. Such a Board was thereupon convened. As per the Agreement, the Board was bi-partisan in character, consisting of two company officials and two of plaintiff's fellow pilots who were members of ALPA and appointed by that organization with plaintiff's consent. Thompson, one of the pilot members of the Board, acted as chairman. In the letter of submission, ALPA presented to the Board for adjudication the question whether the defendant had "sufficient valid justification and adequate good cause" to discharge plaintiff upon the ground that clashes of temperament between plaintiff and certain other of defendant's pilots resulted in quarrels and disputes which adversely affected the morale of the pilot group. While defendant, at the hearing and before this Court, injected the additional question of plaintiff's professional competence as a pilot, the letter of submission delimited the Board's power[2] so that defendant's additional allegation must here be disregarded.

A hearing was held on November 29, 1948 at which plaintiff participated in person and by legal counsel who was also an official of ALPA. Plaintiff introduced his own testimony, that of other witnesses, and submitted a number of documents. The hearing resulted in a unanimous decision in favor of defendant after plaintiff had rejected a face-saving offer to resign. Although the Agreement, setting up the System Board of Adjustment, provided that the Board's decision shall be final and binding upon the parties, this action was commenced to adjudicate the identical question determined by the Board.

Plaintiff advances a great number of reasons why he should not be bound by the Board's decision. Most of these can be disposed of and the rest placed in their proper context by a clear understanding of the scope of judicial review of arbitration awards.

The primary function of arbitration is to serve as a substitute for and not a prelude to litigation. The arbitral process affords an aggrieved party the advantages flowing from a quick and cheap decision rendered by a Board drawn from the particular industry and familiar with the specific technical matter under consideration. Broad judicial review on the merits would render resort to arbitration wasteful and superfluous; and an accepted, indeed favored, method of resolving industrial disputes would atrophy for nonuse.[3] Plaintiff was initially faced with a choice of submitting his grievance to a System Board of Adjustment or taking it to court.[4] Having chosen the first alternative

1. 45 U.S.C.A. §§ 181–188, specifically § 184.

2. Updegraff & McCoy, Arbitration of Labor Disputes, 93, 94 (1946).

3. Updegraff & McCoy, note 2, supra, at 17–18; Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv.L. R. 681 (1950).

4. The remedy provided by the Railway Labor Act is not exclusive. Moore v. Il-

he is bound by the rules underlying the Board's operation, one of which is the finality of its decision.[5] Judicial inquiry is therefore at an end once it is determined: (1) That the Board's procedure and the award conformed substantially to the statute and the Agreement, (2) That the award confined itself to the letter of submission, and (3) That the award was not arrived at by fraud or corruption.[6]

■ Plaintiff, in attacking the jurisdiction of the Board, insists that as a matter of law an employee's personal incompatibility with his fellows, though leading to frequent quarrels and a lowering of the pilots' morale, cannot constitute justification for termination of his employment. The Court thinks otherwise. As neither the statute nor the Agreement prescribed the grounds for discharge, general legal standards within the realities of the contract situation must govern.[7] Evidence was produced, and the Board was justified in finding, that acrimony reached the point at which co-pilots were reluctant to fly with plaintiff. Keeping in mind that the industry here in question is an airline, that defendants' aircraft fly over a relatively dangerous and difficult route, and that human life rests in the hands of the pilots, the Court is of the opinion that personality flaws may well justify termination of employment where they affect the willingness to fly, the morale, the alertness of pilot personnel. The letter of submission, then, framed a proper controversy; and the award, which exonerated the defendant expressly on the basis of the grounds submitted, was one within the power of the Board to render. It remains merely to consider the adequacy of the procedure and to determine the Board's bona fides.

■ On the procedural level, plaintiff first calls attention to defendant's failure to furnish plaintiff with a copy of the precise charges leveled at him. Such omission contravened the express provision of the Agreement. The evidence discloses, however, that at a conference between plaintiff's then attorney and defendant's vice-president, the charges against plaintiff were discussed in great detail. Plaintiff moreover did not maintain at the hearing that he was unable to defend himself adequately for want of specific charges. The Court is therefore of the opinion that plaintiff must be held to have waived a formal list of charges.

Two other procedural irregularities were advanced which can be quickly disposed of. Plaintiff claims to have been prejudiced by a seven months' delay in the hearing and by the fact that defendant declined to call certain witnesses who might have spoken in favor of plaintiff. With one exception, it was plaintiff who requested postponements of the hearing; and in the one instance in which defendant pressed for delay, neither improper motive nor harmful effect was shown. Nor may plaintiff impose on de-

linois Central Railway Co., 1941, 312 U. S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Koppal v. Transcontinental & Western Airlines, 8 Cir., 1952, 199 F.2d 117.

5. 45 U.S.C.A. §§ 151, 152, 154–163, pertaining to carriers by rail were expressly made applicable also to carriers by air. 45 U.S.C.A. § 181. In International Union, United Automobile, Aircraft & Agricultural Implement Workers of America v. Delta Airlines, D.C.N.D.Ga.1949, 83 F.Supp. 63, it was held that 45 U.S.C.A. § 153 was made applicable to carriers by air by 45 U.S.C.A. § 184. Under § 153 the finality of decisions by adjustment boards has frequently been upheld. New Orleans Public Belt Railroad Commission v. Ward, 5 Cir., 1950, 182 F.2d 654; Hecox v. Pullman Co., D.C.W.D.Wash.1949, 85 F.Supp. 34; Ramsay v. Chesapeake & Ohio Railroad Co., D.C.N.D.Ohio 1948, 75

F.Supp. 740; Kelly v. Nashville, Chattanooga & St. Louis Railroad Co., D.C. E.D.Tenn.1948, 75 F.Supp. 737; Berryman v. Pullman Co., D.C.N.D.Mo.1942, 48 F.Supp. 542.

6. In Edwards v. Capital Airlines, 1949, 84 U.S.App.D.C. 346, 176 F.2d 755, the court reviewed the award of a System Board of Adjustment on the merits. In that case, however, plaintiff was a co-pilot who brought his grievance before a board, the labor members of which were pilots and members of a union which opposed plaintiff's claim. The court made it clear that it subjected the award to such broad review precisely because plaintiff was not properly represented before the board.

7. Koppal v. Transcontinental & Western Airlines, 8 Cir., 1952, 199 F.2d 117.

fendant the affirmative burden of calling adverse witnesses. Plaintiff had and did not avail himself of the opportunity of calling those witnesses himself.

Plaintiff further attacks the Board action by alleging that the arbitrators had foreknowledge of the matter submitted and that such foreknowledge must have affected the award so as to reduce the hearing to a farce. It is true that the Board members knew of the occurrences leading up to plaintiff's discharge before the formal hearing was conducted; in fact, dealing as we are with the officers and employees of a relatively small company, it would have been hardly possible to bring to the hearing four arbitrators who had no information on the matters in controversy. But Board members are not jurors; the Board is bipartisan rather than impartial and disinterested; and foreknowledge, which plaintiff considers a ground for vitiating the proceedings, is actually a usual if not necessary attribute of an arbitration under the Railway Labor Act. Plaintiff is of course entitled to have each arbitrator exercise his independent judgment in arriving at his decision,[8] but as discussed hereafter, plaintiff has failed to rebut the presumption that each arbitrator did so act.

■ Lastly, plaintiff alleges that the award was brought about by fraud, collusion and undue influence. Specifically he insists that the defendant dominated the Board and brought irresistible pressure to bear upon the pilot members of the Board to coerce them into concurrence with the company decision. To sustain these assertions, plaintiff and his counsel testified to a conversation in which one of the pilot members alluded to an early vote in favor of plaintiff by both pilot members. Even if such a vote had been initially taken, its subsequent reversal would not necessarily impute wrongdoing to the defendant.[9] But against that remote hearsay declaration must be placed the unqualified statement of each member of the Adjustment Board, either by direct testimony, by exhibit introduced in evidence, or by affidavit attached to the pleadings, that in the only vote taken each member found for defendant, and that the defendant in nowise attempted to influence, sway or overcome the independent judgment of any of the arbitrators. And although the affidavits are of course not evidence, plaintiff made no attempt to call the pilot members, who were available, in order to bolster the extrajudicial declaration on which he relies.[10]

However weak the attack on the good faith of defendant and the arbitrators, it far exceeded the quantum of proof plaintiff mustered against the attorney who represented him at the hearing. Unsupported by facts, and armed only with innuendo and supposition, plaintiff purports to besmirch the integrity and legal ethics of a man who counseled him with skill and loyalty. Irresponsible, unwarranted charges are not enough.

Out of an abundance of caution, the Court denied defendant's motion for summary judgment and subjected the arbitration proceedings to a perhaps broader judicial review than the law demands.[11] Plaintiff has

8. See Burchell v. Marsh, 1854, 17 How. 344, 58 U.S. 344, 15 L.Ed. 96; United Fuel Gas Co. v. Columbian Fuel Corp., 4 Cir., 1948, 165 F.2d 746; American Almond Products Co. v. Consolidated Pecan Sales, 2 Cir., 1944, 144 F.2d 448, 154 A.L.R. 1205; Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv.L.R. 681, 684 (1950).

9. Section (m) of the Agreement provides for the appointment of a fifth and neutral member, possibly selected by the National Mediation Board, when a deadlock is reached and no procedure for breaking such a deadlock is agreed upon within thirty days thereafter. Clearly, therefore, the Agreement envisions the possibility of a change of vote.

10. While an arbitrator may ordinarily not testify to his own misconduct in order to impeach an award, the complaining party may take the testimony of an arbitrator to implicate the other party in the alleged misconduct, bias, partiality or corrupt action. Sturges, Commercial Arbitrations and Awards, § 305 (1930).

11. Petition of Brink, D.C.E.D.N.Y.1951, 98 F.Supp. 135, affirmed on opinion of court below Brink v. Pan American World Airways, 2 Cir., 1952, 193 F.2d 1009. See also cases cited in note 5, supra. It must be kept in mind that

fallen far short of sustaining his burden of proof.

Judgment with costs will be entered in favor of defendant. Let findings of fact and conclusions of law be prepared in accordance with the Rules.

---

this action is a collateral attack on an award, not a statutory impeachment proceeding brought within ten days after

the award is rendered pursuant to 45 U.S.C.A. § 159.