James R. WEAVER, Plaintiff,

v.

PENNSYLVANIA RAILROAD COMPANY, Defendant.

United States District Court
S. D. New York.
March 29, 1956.

Bennett E. Aron, Brooklyn, N. Y., for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant. Donald H. Balleisen, New York City, of counsel.

HERLANDS, District Judge.

This motion for summary judgment by defendant-railroad is granted for the reasons set forth in this opinion.

The question presented by this motion is whether or not the disputes clause contained in a collective bargaining agreement, which provides that decisions of the particular System Board of Adjustment shall be "final and binding," precludes the bringing of the present action by plaintiff, a discharged employee of defendant.

The complaint is predicated upon a claim that plaintiff, a private patrolman formerly employed by defendant, was improperly discharged from his employment; that the procedure set up by the collective bargaining agreement between defendant and the labor union of which plaintiff was a member had not been lawfully observed, in that a private administrative hearing accorded plaintiff did not afford him a fair trial; and that hence plaintiff is entitled to $50,000 damages for his wrongful discharge.

The proper determination of this motion requires a consideration of (1) the pertinent provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq.; (2) the controlling terms and provisions of the collective bargaining agreement, pursuant to which a voluntary System Board of Adjustment was set up; and (3) the record of the proceedings, which resulted in a preliminary hearing, a trial hearing, and an appellate hearing, and which eventuated in the dismissal of plaintiff.

Reduced to its essence, plaintiff's claim is that he did not receive a fair hearing, and that his fundamental rights have thus been invaded. Plaintiff does not dispute the fact that at all of the pertinent times involved herein, he was a member of The Pennsylvania Railroad Company and The Long Island Railroad Company Police Officers' Benevolent Association, Inc., which was the representative of employees of the plaintiff's class; that the terms of the collective bargaining agreement between said union and defendant were an integral part of plaintiff's contract of employment; that plaintiff was bound by all of the terms of the collective bargaining agreement; and, in particular, that plaintiff was bound by the disputes clause, which is the fulcrum on which this case turns.

The relevant provisions of the Railway Labor Act are contained in 45 U.S.

C.A. § 153, First (i) and Second. Section 153, First (i) provides that disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes, but failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the National Adjustment Board. Section 153, Second provides that nothing in the section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system groups, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in section 153.

Thus, the setting up of the voluntary System Board of Adjustment by and between defendant-railroad and the union —which Board has already passed negatively on plaintiff's allegations of an unfair trial and discharge without cause— was under the authorization of the above section of the Railway Labor Act.

An examination of the printed collective bargaining agreement, which has been submitted to the Court in booklet form, indicates that the following are the decisive provisions:

"Preamble

"(a) The outline of the method in which controversial matters are to be handled as set forth below is for the purpose of expeditious, *conclusive* adjustment of matters presented, to the end that there may be a satisfied and cooperative spirit among the officers and employes.
\* \* \*" (Emphasis supplied.)

"10. The decisions of this Board of Adjustment shall be stated in writing. Copies of each decision shall be furnished to the respective parties to the controversy. Additional copies shall be furnished to the members of the Board.

"*The decisions of the Board shall be final and binding upon all parties to the dispute.*" (Emphasis supplied.)

The full record of the proceedings had herein has been examined by me. The following is a chronological summary of the events which lead to the discharge of plaintiff.

During August 1954, the proprietor of an outboard motor sales and repair shop informed defendant-railroad that a motor had been left with him for repair, which he identified as one that had been missing from a shipment of motors consigned to his shop over the lines of defendant-railroad about two years previously and with respect to which he had filed a shortage claim. He also informed defendant that plaintiff claimed to be the owner of the motor. Plaintiff was a railroad policeman employed by defendant-railroad company since August 20, 1941.

As a result of this information, defendant commenced an investigation and questioned plaintiff. A substantial part of defendant's investigation was carried on by a Lieutenant Tucker. Tucker questioned plaintiff on August 30, 1954. At this examination, plaintiff explained how he obtained possession of the motor in the following words:

"I found it down in the street, it's an alleyway just below the railroad itself, somewhere in the vicinity of Jersey Ave. and Cole St. I would not have known it was down there only I saw some fellows down there and looking down from the elevated structure of the railroad these fellows observed me when I shined my light down at them and started to run. Then I observed the motor laying on the ground. I was on my way

off duty down the elevation to get my car and upon arriving at my car I got into it and drove it to where I had seen the motor. I put the motor in my car and took it home with me."

Plaintiff testified that the above incident took place some time during the last three months of 1952. This date is questionable, in view of later testimony of the Eastern Distributor of the type of outboard motor in question, that this type of motor only became available for distribution so late in 1953 that it was called a '54 model.

In reply to further questioning, plaintiff testified that he never reported the incident of the men gathered in the alley, nor did he ever report finding the outboard motor either to the Jersey City Police or to his superiors on the defendant-railroad's police force. Plaintiff kept the outboard motor for his own use.

As a result of defendant's investigation, plaintiff was charged with "Failure to take the proper action incumbent upon a police officer in connection with the confiscation by you of a Champion outboard motor at or near the completion of your tour of duty ending at 11:59 P.M., Harsimus Cove, Jersey City, N. J." It will be noted that plaintiff was not charged with theft, but that the basis of the charge was plaintiff's own admission as to how the motor came into his possession.

Rule 6–A–1.(a) of the applicable collective bargaining agreement provides: "Lieutenants, sergeants and patrolmen shall not be disciplined nor dismissed from service without a fair and impartial trial."

Pursuant to this rule, plaintiff was given a trial on September 20, 1954, at which Lieutenant Tucker presided. The fact that Lieutenant Tucker sat as "judge" at plaintiff's trial is the gist of plaintiff's complaint that he was not given a fair and impartial trial; and this is the alleged violation of the collective bargaining agreement. Plain-tiff's position is based upon the fact that Lieutenant Tucker conducted the preliminary investigation, and that plaintiff feels that Lieutenant Tucker had prejudged the matter in that, when plaintiff took a lie detector test prior to the trial in the presence of Tucker, Tucker—after observing the results of the test—expressed the opinion that plaintiff was lying. However, the results of the lie detector test were obviously not considered in drawing up the charge. The charge on which plaintiff was tried was based upon his own admitted testimony as to how he came into possession of the motor. Furthermore, at the trial, plaintiff was present and was represented by counsel. Plaintiff's counsel had the right to cross-examine and, in fact, did cross-examine Lieutenant Tucker. At the trial, plaintiff did not attempt to alter his original explanation as to how he came into possession of the motor.

On October 14, 1954, plaintiff was notified that he had been dismissed from his job because of the offense charged.

On January 11, 1955, plaintiff (in writing, through his attorney) appealed to the Police Department Employees' Board of Adjustment, the previously mentioned System Board of Adjustment. It is the decision of this System Board of Adjustment, which affirmed the dismissal of plaintiff, which is the basis of defendant's present motion for summary judgment.

The position taken by plaintiff as to why the System Board of Adjustment should not sustain the position of defendant was that (1) the dismissal of plaintiff was arbitrary and unwarranted, in that none of the regulations referred to at the hearing were applicable to the facts in the case; (2) the evidence was wholly insufficient to sustain the charges made against plaintiff and (3) the hearing of charges against plaintiff was not a fair hearing as required by the Collective Bargaining Agreement under the Railway Act.

At the trial, Lieutenant Tucker had stated the applicable regulations to be as follows:

"This failure to acquaint anybody with the fact that you had confiscated a Champion outboard motor and tank is the basis of these charges against you at this time, for your Police Department Book of Rules requires under Art. G, Page 13, as one of the requirements for employment that your character and reputation must be above question. Reg. No. 3, reads: The fact that any person enters, or remains in the service of the Company, will be considered as an assurance of willingness to obey its requirements and regulations. No one will be excused for the violation of any of them, even though not included in those applicable to his department. Article 4 on Page 14, reads, If in doubt as to the meaning of any instructions, application must be made at once to the proper authority for an explanation. Ignorance is no excuse for neglect of duty. Article on Page 19, No. 27, reads: Any matter of importance that may transpire during the day or night, or any unusual occurrence or condition of the Company's property, must be carefully noted and reported to the Captain. Article 28 on Page 19, reads: Information obtained should be in writing if possible, but if given verbally should at once be put in writing. And an excerpt from Article 29 on Page 19, reads: Although certain hours may be allotted for the active performance of duty on ordinary occasions, yet at all times members are on duty. * * * By your own admissions, in the investigative testimony, you have failed to take any action whatsoever as charged in your Book of Rules."

The position taken by defendant before the System Board of Adjustment as to why defendant's decision should be sustained was as follows: that the record in the case showed that plaintiff was afforded a proper trial in accordance with the Schedule Agreement covering the class of employees of which he was a member; that evidence was adduced at the trial which clearly supported a finding of guilt of the offense with which charged; that the offense with which plaintiff was charged was a serious one, particularly when it involved a member of the Police Department, whose actions in a situation such as that here involved must be beyond reproach and capable of withstanding scrutiny beyond that of the average employee; that moreover, the record does not show that defendant's action in this case was in any way malicious, capricious, arbitrary or unfair.

Defendant further took the position that the technical assertions presented in plaintiff's behalf by his attorney do not support the contention that plaintiff is innocent of the offense with which charged; that the trial here involved was not a criminal trial and did not necessitate adherence to, or the presence of, all of the qualities and factors usually present in connection with a criminal proceedings in a court of law; that plaintiff was not charged with stealing from a shipment being handled by defendant, nor was he charged with theft of the motor he admitted was in his possession. Rather, as the charge clearly shows, he was charged with an offense involving his failure to properly conduct himself and to take certain action which reasonably and properly must be expected of a police officer with over ten years' experience.

The decision of the System Board of Adjustment sustained defendant's position.

Because plaintiff has challenged the fitness of Lieutenant Tucker to act as the hearing officer, the nature of the evidence upon which plaintiff's dismissal was based should again be pointed up. The charge and dismissal where based upon plaintiff's own version of how he came into possession of the motor. Since the essential facts were not in dispute, there was no occasion at the hearing to deter-

mine the relative credibility of witnesses. Moreover, there is nothing in the way of record testimony to indicate either that Lieutenant Tucker was, in fact, prejudiced or disqualified in the conduct of the preliminary examination of plaintiff or in the conduct of his subsequent trial; or that, as a result of Lieutenant Tucker's alleged partisanship, plaintiff did not get a full and fair hearing.

The complete record of the proceedings was reviewed by the System Board of Adjustment. That Board consisted of twelve members, six of whom represented management and six of whom represented the employees. Before the case came before the System Board of Adjustment, there had been intermediate appeals by plaintiff. Thus, on October 25, 1954, plaintiff appealed to the superintendent of the New York Division of defendant-railroad, pursuant to Rule 7 of the collective bargaining agreement. This appeal was denied. Thereafter, plaintiff appealed, in accordance with the agreement, to the general manager of the Eastern Region of defendant-railroad. That appeal also was denied. Finally, the System Board of Adjustment rendered a decision in which it unanimously upheld the hearing officer.

█ The specific issue of fair trial was litigated in the course of the foregoing private administrative hearings. Every convincing indication points to the conclusion that plaintiff was accorded due process, both in the procedural as well as in the substantive sense. Justification for his dismissal is clearly demonstrated by the record before me.

█ The authorities uniformly hold (1) that the disputes clause involved herein will be enforced by the courts; and (2) that a decision by a voluntary System Board of Adjustment, such as the one involved in the case at bar, is conclusive upon an employee, provided the applicable statutory and jurisdictional processes have been observed. Bower v. Eastern Airlines, Inc., 3 Cir., 1954, 214 F.2d 623, certiorari denied 1954, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685; Farris v. Alaska Airlines, Inc., D.C. Wash.1953, 113 F.Supp. 907; Pigott v. Detroit, T. & I. R. Co., 6 Cir., 1955, 221 F.2d 736, 741, certiorari denied 350 U.S. 833, 76 S.Ct. 68; Rychlik v. Brotherhood of Railroad Trainmen, D.C.W.D. N.Y.1955, 128 F.Supp. 449, motion for reconsideration denied D.C.1955, 130 F. Supp. 580; Michel v. Louisville & Nashville R. Co., 5 Cir., 1951, 188 F.2d 224, certiorari denied 1951, 342 U.S. 862, 72 S.Ct. 87, 96 L.Ed. 648; Washington Terminal Co. v. Boswell, 1941, 75 U.S. App.D.C. 1, 124 F.2d 235, 240, affirmed 1942, 319 U.S. 732, 63 S.Ct. 1430, 87 L. Ed. 1694; Reynolds v. Denver & Rio Grande Western R. Co., 10 Cir., 1949, 174 F.2d 673. Cf. Atlantic Coast Line R. Co. v. Pope, 4 Cir., 1941, 119 F.2d 39; United Railroad Operating Crafts v. Pennsylvania R. Co., 7 Cir., 1954, 212 F.2d 938.

█ In the light of the foregoing decisions, it may be seriously doubted whether this Court possesses the power to review the judgment of the System Board of Adjustment. This is particularly so in view of the fact that plaintiff does not attack the fairness of the procedure followed before the System Board of Adjustment. Nevertheless, I have examined the entire record, and I am firmly convinced that plaintiff has been dealt with fairly and properly.

█ Accordingly, the motion for summary judgment should be granted.

Settle order on notice.