**Jack R. HENRY**

v.

**AIR LINE PILOTS ASSOCIATION
INTERNATIONAL, et al.**

**No. C83–962A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 25, 1984.

W. Dennis Summers, Ezra B. Jones, III, Atlanta, Ga., for plaintiff.

J.R. Goldthwaite, Jr., Atlanta, Ga., Sarah Perry Fleischer, Washington, D.C., for Air Line Pilots Ass'n.

Thomas Kassin, Atlanta, Ga., for Delta Air Lines, Inc.

## ORDER OF COURT

MOYE, Chief Judge.

The above-styled action is before the Court on cross-motions for summary judgment. Plaintiff Jack R. Henry (Henry) asks this Court to vacate the findings of a System Board of Adjustment convened pursuant to the provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (RLA or the Act) upholding defendant Delta Air Line's (Delta) decision to terminate Henry's employment. Henry also alleges that his union, defendant Air Line Pilots Association (ALPA), breached its duty of fair representation. Because of the complicated nature of this case, a detailed discussion of the facts will be presented.

### Factual Background

Henry was first hired by Delta as a pilot in 1957. From November, 1964, through May, 1973, Henry was involved in eight instances of employment-related misconduct. He was disciplined by Delta in four of those instances. On December 31, 1974, Henry entered into an unauthorized area of the Dallas/Fort Worth Airport and steadfastly refused to identify himself to a security agent. After he was arrested, Delta removed him from service pending an investigation of the incident.

Because of these various instances of misconduct, Delta asked Henry to undergo psychological and psychiatric testing. After consulting with ALPA's representatives and with ALPA's Aeromedical Advisor, Dr. Richard L. Masters, Henry agreed to the testing. The first doctor he saw was Thomas E. Butcher, who observed that Henry had problems dealing with authority, and who recommended that Henry undergo psychotherapy to help him with his problem. Pursuant to Dr. Butcher's recommendations, Henry was placed on sick leave on April 11, 1975.

Henry's subsequent evaluations were arranged by Dr. Masters, who recommended four doctors who specialized in aviation psychiatry. Henry first saw Dr. Don E. Flinn of the UCLA Medical Center. Al-

though Dr. Flinn recognized a tendency on Henry's part to be unusually sensitive to authority, he did not characterize Henry's disorder as a psychiatric disease. Dr. Flinn further found that Henry's problems did not interfere with his competence as a pilot.

Henry also saw Dr. Joel E. Ruffman, a neurologist. Dr. Ruffman concluded that Henry exhibited "some confused and ... bizarre thinking" and that Henry probably suffered from early mild dementia. Dementia is generally defined as "deviation from normal brain functioning and the thinking process." Plaintiff's Appendix 7, p. 4. Dr. Ruffman concluded that Henry should receive a thorough neurologic evaluation. This evaluation was conducted by Dr. Mark A. Kozinn on June 24, 1975. Dr. Kozinn concluded that there was "no evidence of neurologic disease."

On June 28, 1975, Dr. Butcher's report and Dr. Kozinn's report were forwarded to Dr. Flinn for evaluation. Dr. Flinn also showed the reports to psychologist Alvin G. Burstein. Dr. Burstein concluded that Henry's data indicated a paranoid state and that Henry should undergo more tests. Dr. Flinn disagreed and concluded that a clinical diagnosis was not warranted.

Henry declined to undergo any further treatment and only provided Delta with the reports of Doctors Flinn and Kozinn which stated that Henry did not have a psychiatric illness. On the basis of these reports, Delta returned Henry to active duty on November 1, 1975. At this time, Delta warned Henry that any further violations of company rules would result in Henry's termination. After 1975, Henry engaged in five instances of misconduct. After the fifth instance, in December, 1980, he was fired.[1]

After his termination, Henry sought ALPA's assistance. ALPA's Contract Administrator, Robert H. Drew, met with Henry and outlined the various options available to him. Drew told Henry that he could file a grievance; accept early retirement; or seek disability retirement. Henry decided to file a grievance and his termination was upheld at the first stage of the procedures.

Henry then submitted his case to arbitration before the System Board, a body created by the RLA and permitted by Section 18 of the Collective Bargaining Agreement. Attorney James S. Berger was appointed to represent Henry. In preparation for the hearing, Berger travelled to Atlanta and met with Henry on February 3 and February 9, 1981. During these meetings, Henry provided Berger with all of his personal files, including the medical reports that Henry did not submit to Delta. Berger reviewed all of these documents and discussed the case with Henry. Berger decided to challenge Henry's termination on the grounds that his overall record did not justify termination.

The System Board hearings lasted five days. During the hearings, Berger continued to discuss the case with Henry. Henry has stated that he had a good working relationship with Berger and that he had confidence in the manner in which his case was presented. Henry Dep. at 53, 66–67, 187–188. Henry did not request a medical defense and Berger did not believe that such a defense was necessary or appropriate.

On May 20, 1984, the System Board upheld Henry's termination. Subsequently, Henry sought more medical help and was diagnosed as suffering from a Paranoid Personality Disorder, DSM 111,301.00. Dr. Alan Sutton indicated that this disorder probably existed since 1955.

Henry now asks this Court to vacate the Board's decision and remand this case for a new hearing. Henry claims that the ALPA breached its duty of fair representation by failing to present a medical disability defense on his behalf. He also claims that he was denied a fair hearing under the RLA because members of the Board were biased against him and because the Board refused

---

1. The plaintiff was fired for rejecting a recommended air traffic clearance. There is some evidence that pilots have the right to reject such a clearance. Plaintiff's App. 3, p. 473.

to allow him to review his personnel file. And, Henry alleges that he was denied due process of law because the Board failed to recognize and consider his alleged mental disorder.

Both defendants have filed motions for summary judgment on the grounds that Henry's claims are barred by the statute of limitations. Defendant ALPA also argues that even if Henry's claim is not time barred, he has failed as a matter of law to establish that the Union breached its duty of fair representation. And, defendant Delta has put forth various alternative arguments in support of its motion for summary judgment if this Court decides that Henry's claim was timely. After a brief review of the Railway Labor Act and its procedures relating to an employee's discharge, this Court will discuss each of the parties' arguments.

## I. THE RAILWAY LABOR ACT

■ The RLA was enacted by Congress to protect the public from disruptions in interstate transportation services. The RLA created a framework for the efficient settling of labor disputes in the railroad and airlines industry. *Union Pac. R.R. v. Price*, 360 U.S. 601, 609, 79 S.Ct. 1351, 1355, 3 L.Ed.2d 1460 (1959). Section 3 of the RLA, 45 U.S.C. § 153, provides two methods for resolving disputes between railroad employers and employees. Section 3 established the National Railroad Adjustment Board (NRAB) to settle labor disputes and also authorized railroads to establish regional boards of adjustment to decide such disputes. The 1936 amendments to the RLA, which extended the Act to airlines, did not extend the NRAB's jurisdiction to disputes in the airlines industry. Instead, Congress enacted Sections 204 and 205, 45 U.S.C. §§ 184, 185 which authorized the National Mediation Board to establish the as yet unestablished National Air-Transport Adjustment Board which would be the functional equivalent of the NRAB. Pending the creation of this Board, the airlines and its employees are "under the statutory duty of establishing and utilizing

... boards of adjustment for the purpose of adjusting and deciding disputes ...." *International Ass'n of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 686, 83 S.Ct. 956, 959, 10 L.Ed.2d 67 (1963). It is well established that these boards of adjustment are the "mandatory, exclusive, and comprehensive" method for resolving minor labor disputes in the airlines industry. *De La Rosa Sanchez v. Eastern Airlines, Inc.*, 574 F.2d 29, 31 (1st Cir.1978). And, that Congress's initial exception of air carriers from section 153 from air carriers was to be temporary. *Barnett v. United Airlines, Inc.*, 729 F.2d 693, (10th Cir., March 13, 1984). Thus, the principles and case law concerning 45 U.S.C. § 153 apply equally to airlines adjustment boards.

## II. STATUTE OF LIMITATIONS

Both defendants argue that the recent Supreme Court case of *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 1, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) applies to the present controversy. In *DelCostello*, the Supreme Court held that the six-month limitations period in § 10(b) of the National Labor Relations Act applied to an employee who brought a suit against his employer and the union under § 301 of the Labor Management Relations Act. The defendants argue that Henry's suit is similar to the cause of action brought by the plaintiff in *DelCostello* and, thus, the six-month limitations provision should apply to the present case. The defendants also cite several cases that have applied *DelCostello* to suits brought under the RLA. *Hunt v. Missouri Pacific R.R.*, 729 F.2d 578, (8th Cir.1984); *Linder v. Berge*, 567 F.Supp. 913 (D.R.I.1983); *Staggs v. Northwest Airlines, Inc.*, Civil No. 82–C–4658 (N.D.Ill. Sept. 6, 1983).

■ The Court in *DelCostello* had to "borrow" another statute of limitations because the LMRA did not contain its own statute of limitations. The RLA, however, does contain its own limitations period. 45 U.S.C. § 153(r) provides the following:

All actions at law based upon the provisions of this section shall be begun with-

in two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after.

Congress has already balanced the relevant competing interests and has determined the appropriate limitations period for lawsuits brought under the RLA. Thus, there is no need to borrow a statute of limitations from another source. None of the cases cited by the defendants mention this statutory limitation period. And, the Tenth Circuit recently held that this two-year period applies to a lawsuit brought by an airline employee challenging a System Board determination. *Barnett v. United Airlines,* 729 F.2d 693 (10th Cir. March 13, 1984). Accordingly, because Henry's lawsuit was brought under the RLA and because he filed his claim within two (2) years of the Board's decision, this Court holds that his claim was timely filed.[2]

### III. DUTY OF FAIR REPRESENTATION

In Count I of his complaint, Henry alleges that the ALPA breached its duty of fair representation by failing to assert a defense of medical disability at the Systems Board hearing. Henry argues that his attorney, Mr. Berger, had access to numerous files which indicated that Henry was suffering from a severe personality disorder but that Mr. Berger failed to raise disability as a defense. Henry also argues that, at the very least, Mr. Berger should have mentioned to him the possibility of raising such a defense.

In addition to the argument that Mr. Berger should have asserted a disability defense, Henry also claims that the ALPA breached its duty of fair representation by not investigating his case and informing him of the possibility of such a defense. Henry alleges that Mr. Drew, who was responsible for setting up plaintiff's medical evaluations, did not inquire into the results of those evaluations thereby failing to conduct a full investigation into the plaintiff's grievance. Henry concludes that Mr. Drew's inaction amounted to the kind of conduct that constitutes a breach of the duty of fair representation.

■■■ The law is well settled that a union does not breach its duty of fair representation merely because it acts negligently or exercises poor judgment. *Harris v. Schwerman Trucking Co.,* 668 F.2d 1204, 1206 (11th Cir.1982). In determining whether there has been a breach of this duty, the distinction "between honest, mistaken conduct, on the one hand, and deliberate and severely hostile and irrational treatment, on the other, needs … to be maintained." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971). And, a claim that the union breached its duty of fair representation cannot be sustained simply because the strategy chosen was unsuccessful. *Walden v. Local 71, Teamsters,* 468 F.2d 196 (4th Cir.1972). In sum, although the case law is divided as to the exact standard to be used, Henry must at least demonstrate that ALPA's conduct amounted to "gross neglect, perfunctory conduct, or egregious or reckless disregard for the rights of the employee" in order to prevail on his claim. *Brown v. Trans World Airlines, Inc.,* 569 F.Supp. 247 (W.D.Mo.1983).

■■■ Applying these principles to the present case, this Court holds that the ALPA, as a matter of law, did not breach its duty of fair representation. Mr. Berger spent a considerable amount of time preparing Henry's case and discussing the case with Mr. Drew and Henry. Mr. Berger learned that Henry had been given a clean bill of health in 1975 and had continuously maintained a First Class Medical Certificate throughout the time he was employed by Delta.[3] Henry never mentioned

---

**2.** This Court is aware that the result of this holding is that railroad and airline employees will have more time to file their claims than all other employees. Although this Court does not condone this result, this discrepancy is a matter for Congress not for the Courts.

**3.** All pilots on active duty must have such a certificate under FAA regulations.

to Mr. Berger that he wanted to assert a disability defense and Mr. Berger did not believe such a defense to be appropriate. This Court holds, that as a matter of law, Mr. Berger's failure to assert a disability defense does not rise to the level of arbitrary conduct necessary to support a claim of unfair representation.

■ Similarly, Henry's claim that ALPA breached its duty by not fully investigating his past also must fail. Neither Dr. Masters nor Mr. Drew acted arbitrarily or unreasonably. Both men helped Henry get medical attention. In addition, Mr. Drew discussed Henry's case with him after his termination and outlined various alternatives available to Henry. Henry has presented no evidence to indicate that any ALPA employee acted recklessly, in bad faith, or failed to properly investigate his case. Because Henry has not shown that his lawyer or any ALPA employee acted in an arbitrary and capricious manner, defendant ALPA's motion for summary judgment as to all issues is granted.

## IV. FULL AND FAIR HEARING

■ Henry asks this Court to vacate the award of the Systems Board and remand the case for another hearing. The scope of judicial review of cases arising under the RLA is "among the narrowest known to the law." *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir.1970). The findings of the Board are final and conclusive and subject to an extremely limited review by the federal courts. *Air Line Pilots Ass'n, Intern. v. Eastern Airlines, Inc.,* 632 F.2d 1321 (5th Cir.1980). A Board's order can be set aside only if the plaintiff can assert one of the three grounds set forth in 45 U.S.C. § 153(q). These grounds are the following:

1) Failure of the [Board] to comply with the requirements of [the Act]; or

2) Failure of the order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction; or

3) Fraud or corruption by a member of the [Board] making the order.

The Fifth Circuit has recently stated that "an award must be enforced, without judicial review of the evidence, if it draws its essence from the collective bargaining agreement." *Johns-Manville Sales v. Intern. Ass'n of Machinists,* 621 F.2d 756, 758 (5th Cir.1980). This Court's review of the Board's award will proceed applying these principles of limited review.

Henry's first argument is that he was denied a full and fair hearing under Section 157 of the RLA because one of the Board's members, Mr. Rox, was biased against him. This argument overlaps with Henry's argument that the Board's award violated Section 153(q) of the Act because of fraud and corruption by a member of the Board.[4] Henry contends that Rox was biased against him because Rox had been involved with Henry's case since 1970. Mr. Rox was directly involved in Henry's termination and was the immediate superior to Mr. Smith, one of the other Board members. Henry argues that because of Rox's prior involvement with his case, Rox was biased against Henry even before the hearing commenced.

Henry also claims that Rox's actions at the hearings denied him a full and fair hearing and that because of his conduct the Board's award should be vacated because of fraud and corruption. Henry claims that Rox dominated the proceedings "with an adversarial attitude and personal disdain for [Henry], obviously influencing the other members of the Board ...." Plaintiff's Brief at 15. Henry cites various statements made by Rox that Henry claims show Rox's hostile attitude. Rox referred to Henry's evidence as "frivolous" and referred to Mr. Berger as "rude and improper." And, Mr. Rox asked Mr. Berger to refrain from making so many objections because such objections would increase the cost of making a transcript of the proceedings. Henry concludes that this Court

---

**4.** The defendants argue that § 157 does not apply to the present case. Because this Court

finds that Henry was not denied a fair hearing, this Court need not reach that difficult issue.

should vacate the Board's award because of Mr. Rox's conduct and alleged biases.

Henry's argument overlooks the important fact that the members of the Adjustment Board are not supposed to be neutral arbitrators. The Boards are made up of employer representatives and labor union representatives. 45 U.S.C. § 153. If there is a deadlock, there are provisions in the Act for the designation of a neutral person to act as a referee and break the deadlock. 45 U.S.C. § 153(c). Therefore, many courts have held that a plaintiff cannot challenge the Board's award on the grounds that one of the Board Members was a company executive who had previous dealings with the plaintiff. *See e.g., Farris v. Alaska Airlines, Inc.,* 113 F.Supp. 907, 910 (W.D. Wash.1953). *Arnold v. United Airlines, Inc.,* 296 F.2d 191 (7th Cir.1961). The Court in *Farris* stated the following:

> It is true that the Board Members knew of the occurrences leading up to plaintiff's discharge before the formal hearing was conducted .... But Board Members are not jurors; the Board is bipartisan rather than impartial and disinterested; and foreknowledge, which plaintiff considers a ground for vitiating the proceeding, is actually a usual, if not necessary, attribute of an arbitration under the Railway Labor Act. *Farris* at 910.

▄▄▄ Applying these principles to the present case, this Court holds that it cannot vacate the Board's award merely because Mr. Rox was a Delta executive who had prior dealing with Henry. In addition, Henry has not shown that Mr. Rox's behavior during the proceedings was egregious enough to warrant a reversal by this Court of the Board's decision. The statements made by Mr. Rox clearly do not rise to the level of fraud or corruption nor ·do they lead to the conclusion that Henry was denied a fair hearing within the meaning of the RLA.

Henry also claims that the Board's award must be vacated because the Board refused to order Delta to turn over Henry's personnel file to Henry. Henry argues that this file contained substantial evidence of his odd behavior and that such evidence could have affected the Board's decision. This evidence consisted primarily of memos written by several Delta executives reflecting concerns as early as 1970 that Henry was exhibiting suspect behavior that could prove dangerous both to the airline and its passengers. And, Henry points to two letters in the file written by Delta passengers praising Henry and his job performance.

▄▄▄ Henry's argument must fail for several reasons. First, he nowhere indicates the source of his "right" to see his personnel file. Secondly, and more importantly, Henry's argument does not fit into any of the three categories listed in 45 U.S.C. § 153(q). As noted earlier, this Court can only vacate an award based on a violation of one of these categories. Furthermore, this Court feels that the evidence contained in Henry's file could not have affected the Board's decision. Therefore, Henry's argument that the Board's award must be vacated because he was denied access to his personnel file must be rejected.

▄▄▄ Henry's last argument is that the System Board denied him due process of law by failing to recognize and consider his medical disorder. This argument is without merit because the Supreme Court has held that judicially created challenges to System Board's awards must fail. In *Union Pac. R.R. v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), the Court stated the following:

> The dispositive question is whether the party's. objections to the Adjustment Board's decision fall within any of the three limited categories of review provided for in the Railway Labor Act. Section 153 First (q) unequivocally states that the 'findings and order of the [Board] shall be conclusive on the parties' and may be set aside only for the three reasons specified therein. We have time and again emphasized that this statutory language means just what it says. *Id.* at 93, 99 S.Ct. at 401.

Therefore, *Sheehan* precludes judicially created due process challenges to System Board awards and Henry's argument based on due process concerns is without merit.

In sum, this Court finds that Henry has not raised a material issue of fact as to the correctness of the Board's decision or ALPA's alleged breach of its duty of fair representation. Accordingly, defendant Delta Airline's motion for summary judgment as to all issues is hereby GRANTED. Defendant's ALPA's motion for summary judgment as to all issues is hereby GRANTED. Plaintiff Henry's motion for summary judgment is hereby DENIED. This order resolves all of the issues in this case.