Alonzo **LINDER**, et al.

v.

Ole M. **BERGE**, et al.

Civ. A. No. 82–0820–S.

United States District Court,
D. Rhode Island.

June 22, 1983.

Gunning, Lafazia, & Gnys by Robert W. Smith, Providence, R.I., for plaintiffs.

Edwards & Angell by John B. Rosenquest, III, Providence, R.I., and Harold R. Henderson, Jr., Joanna L. Moorhead, Washington, D.C., for N.R.C.P. (Amtrak).

Highsaw & Mahoney by Clinton J. Miller, III, Washington, D.C., Lovett, Morgera, Schefrin & Gallogly, by Aram Schefrin, Providence, R.I., Louis P. Malone, III, Detroit, Mich., for all other defendants.

. MEMORANDUM AND ORDER

SELYA, District Judge.

This is an action filed by six former employees of National Railroad Passenger Cor-

poration ("Amtrak") against Amtrak and their former union, the Brotherhood of Maintenance of Way Employees ("BMWE"), sundry labor organizations affiliated with the BMWE, and various officers of the divers unions, all sued in their respective union capacities.[1] The plaintiffs were hired by Amtrak in the summer of 1976 to perform carpentry work associated with the restoration of Union Station, a railroad depot in Providence, Rhode Island. During the fall of that year, Amtrak eliminated the plaintiffs' positions, allegedly promising that the plaintiffs would be recalled when the restoration project resumed. Amtrak subsequently recommenced the work without re-employing the plaintiffs.

The plaintiffs allege in substance that Amtrak breached its collective bargaining agreement with the BMWE by failing to pay the plaintiffs at appropriate wage levels for their toil on the project and by failing to rehire them when work resumed at Union Station. The plaintiffs also complain that the union violated its statutory duty to represent the plaintiffs in a fair and non-discriminatory manner. The plaintiffs further allege that the union violated the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.* ("LMRDA") by failing to furnish to the plaintiffs copies of the collective bargaining agreement and/or union constitution, and by failing to hold a meeting of the BMWE when and as requested by the plaintiffs. Jurisdiction is bottomed on 28 U.S.C. §§ 1331 and 1337. The union has filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

■ Under the familiar standard applicable to such motions, all facts well-pleaded in the complaint are to be accepted as true for purposes hereof. *Seveney v. United States,* 550 F.Supp. 653, 655 (D.R.I.1982).

■ The union claims, in its motion to dismiss, that the action is barred by the appropriate statute of limitations.[2] The plaintiffs demur.

Since none of the labor-management statutes relevant to this action possess built-in statutes of limitations, the courts are forced to borrow an appropriate limitations period from some other source. As with civil rights statutes, *see Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), the courts, in the labor field, have frequently looked to analogous state statutes of repose. *E.g., United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60–61, 101 S.Ct. 1559, 1562–1563, 67 L.Ed.2d 732 (1981); *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966); *DeArroyo v. Sindicato de Trabajadores Packinghouse,* 425 F.2d 281, 285 (1st Cir.), *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970). But, precepts of federal jurisprudence do not require a court "mechanically [to apply] a state statute of limitations simply because a limitations period is absent from the federal statute." *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). *See also Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. at 705 n. 7 & 707 & n. 9, 86 S.Ct. at 1113 n. 7 & 1114 & n. 9.

The defendants argue that the breach of the duty of fair representation is analogous to an action sounding in tort, *see DeArroyo v. Sindicato de Trabajadores Packinghouse,* 425 F.2d at 285–87; and that the three year statute of limitations set forth in R.I.Gen. Laws § 9–1–14 therefore applies. The plaintiffs do not disagree with the conclusion that their action is most closely akin to an action in tort, but asseverate that the six year statute of limitations set forth in R.I. Gen.Laws § 9–1–13 applies since the action

1. All defendants other than Amtrak are collectively referred to herein as "the union".

2. The union raises in its motion divers other grounds as well; the court, however, need not address these arguments, as the limitations defense is dispositive.

is for a wrong of a genre which, in the plaintiffs' estimation, does not fall within the confines of § 9–1–14. Since the premise underlying this squabble, i.e., the assumption by both parties that the court must borrow a limitations period from the forum state, is itself faulty, the court need not dwell upon the niceties of interstitial interpretation of these Rhode Island statutory enactments.

In *DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) the Supreme Court had to determine the appropriate statute of limitations for an action brought by a union member against both his employer and his union. The Court held that, for litigation brought under the National Labor Relations Act, 29 U.S.C. § 151, *et seq.,* ("NLRA"), the federal courts must borrow and apply the six month statute of limitations governing the filing of unfair labor charges with the National Labor Relations Board. *Id.* at —— —— ——, 103 S.Ct. at 2292–94. Although this holding is not squarely apposite to the case at bar because the NLRA does not govern railway employees, *see Raus v. Brotherhood of Railway Carmen,* 663 F.2d 791, 794 (8th Cir.1981), the tenets underlying the Court's decision in *DelCostello* are transferable. *Cf. Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969). Indeed, the balance of interests so painstakingly crafted by the Court in *DelCostello*—the search for equipoise between the national interest in stability of bargaining and in the expeditious and certain resolution of labor disputes, on the one hand, and the similar but more particularized interest of all parties to a given dispute (employer, employee and union) in not only those considerations but in individualized rights and in the availability of judicial review designed to insure fairness of results without undue disruption of the workplace, the collective bargaining process or the protectable rights of the parties themselves, on the other hand—is precisely what is at stake here. To borrow a phrase utilized by the Supreme Court in a somewhat divergent context, "the family resemblance is undeniable." *DelCostello,* —— U.S. at ——, 103 S.Ct. at 2292. Some explication of this symbiosis appears warranted.

First, the duty of fair representation is implied in the union's right to represent all members of the craft, and is not grounded on a specific statutory command. *See Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). In fact, the duty of fair representation initially arose in the roundhouse of railway labor relations, *Steele v. Louisville & Nashville Railroad Co.,* 323 U.S. 192, 202–04, 65 S.Ct. 226, 232–33, 89 L.Ed. 173 (1944), and was only thereafter applied to unions regulated under the NLRA. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 337–38, 73 S.Ct. 681, 685–86, 97 L.Ed. 1048 (1953). Thus, it is of little moment vis-a-vis the case at bar that the Supreme Court's decision in *DelCostello* was announced against an NLRA backdrop.

This view finds further support in *Raus,* where the Eighth Circuit held that the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA"), only covers disputes between railroad employees and railroad management. *Raus,* 663 F.2d at 794. *Accord Glover v. St. Louis-San Francisco Railway Co.,* 393 U.S. 324, 328, 89 S.Ct. 548, 550, 21 L.Ed.2d 519 (1969). Thus, despite the factual setting of this action, the plaintiffs' claim against the union is primarily dependent, in any event, upon the reach of the fair representation obligation implied under § 301 of the NLRA—and, to that extent, the nose of this particular camel protrudes even deeper into the *DelCostello* tent.

Further, and in the same vein, most courts have held or stated that the standards governing the duty of fair representation are the same for a railroad union as for any other type of union. *See, e.g., International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 46 & n. 8, 47, 99 S.Ct. 2121, 2124 & n. 8, 2125, 60 L.Ed.2d 698 (1979); *Graf v. Elgin, Joliet and East-*

*ern Railway Co.,* 697 F.2d 771, 778 (7th Cir.1983), *Fechtelkotter v. Air Line Pilots Association,* 693 F.2d 899, 903 (9th Cir. 1982); *Matos v. Aeronaves De Mexico, S.A.,* 548 F.Supp. 933, 938 (E.D.N.Y.1982). Like Gertrude Stein's storied rose, a union is a union is a union.

Since this court finds no distinction with respect to intramural union disputes as to fair representation under the RLA as contrasted with the NLRA, the holding in *Del-Costello* must perforce be applied to the instant action. Elsewise, the congressional will would be thwarted, the rationale of the Supreme Court in *DelCostello* would be undercut, and an inexplicable asymmetry between railroad workers and other union members in the fashioning of remedies for alleged breaches of essentially the same fair representational duty of their respective unions would senselessly be engrafted onto the law.

Since all of the contentions of the plaintiffs against the union in the case at bar arose out of events long pre-dating the institution of this action,[3] it is apparent from the face of the pleadings that the plaintiffs' causes of action against the union accrued more than six months prior to the commencement of suit, and that those claims are, under *DelCostello,* time-barred.

■■■ Insofar as the plaintiffs' complaint implicates the LMRDA, there is no readily discernible reason why the *ratio decidendi* of *DelCostello* should not be equally binding. *Cf. Schultz v. Owens-Illinois, Inc.,* 696 F.2d 505, 507 n. 1 (7th Cir.1982); *Aguirre v. Automotive Teamsters,* 633 F.2d 168, 174 (9th Cir.1980). Moreover, even if the demand for documents is seen as a distinct cause of action under 29 U.S.C. § 414, the plaintiffs have not alleged that they were either employees or union mem-

bers when this request was made; thus, they lack standing to pursue a § 414 claim. *Allen v. Maintenance of Way Employees,* 112 L.R.R.M. 3351, 3352 n. 2 (E.D.Pa.), *affirmed,* 112 L.R.R.M. 3448 (3d Cir.1982). And, with regard to the averred failure of the union to call meetings, the plaintiffs have not alleged facts sufficient to show discrimination; there is no intimation that the right to initiate meetings was granted to other union members similarly situated and/or that the plaintiffs' equality of union voting rights was impaired. Such discriminatory conduct lies at the heart of actions for breach of 29 U.S.C. §§ 411, 412. *Crowley v. Local No. 82 Furniture and Piano Moving,* 679 F.2d 978, 990 (1st Cir.1982), *cert. granted on other grounds,* —— U.S. ——, 103 S.Ct. 813, 74 L.Ed.2d 1012 (1983); *accord Calhoon v. Harvey,* 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964). It is apodictic that, where discrimination is at issue, a complaint must, to survive dismissal, state facts which, if proven, would entitle the pleader to relief. *O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974) (42 U.S.C. § 1981); *Sandler v. Eastern Airlines, Inc.,* 649 F.2d 19, 20 (1st Cir.1981) (42 U.S.C. § 2000e *et seq.*); *Fisher v. Flynn,* 598 F.2d 663, 665 (1st Cir. 1979) (42 U.S.C. § 1983 and 42 U.S.C. § 2000e *et seq.*); *Black v. Brown University,* 555 F.Supp. 880, 886 (D.R.I.1983) (42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.*). There is, here, no minimally sufficient factual predicate set forth.

The motion to dismiss must therefore be granted.[4]

SO ORDERED.

---

3. The plaintiffs were furloughed upon abolition of their respective positions at various times from October, 1976 to December, 1976. The Union Station restoration project was revivified during the period May, 1977 through July, 1977.

4. The action is not, however, dismissed as to Amtrak, no motion having been filed by that defendant. Arguably, for reasons which need not be discussed here, such an action may not be foreclosed by *DelCostello.*