**Carlton F. LANG, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORA-TION, United Transportation Union, United Transportation Union-Lodge No. 278, and United Transportation Union-Lodge No. 550, Defendants.**

Civ. A. No. 83–6066.

United States District Court,
E.D. Michigan, S.D.

Jan. 23, 1984.

**706**

Thomas Zdeba, Dearborn, Mich., for plaintiff.

T. Patrick Durkin, C. Thomas Wilson, Detroit, Mich., for defendants.

### MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an action for wrongful termination of employment brought under the Railway Labor Act, 45 U.S.C. §§ 151–163, and for violation of the constitution of the United Transportation Union, one of the defendants herein. The case is before the Court on the motions of all four defendants, the employer Consolidated Rail Corporation ("Conrail"), the United Transportation Union ("UTU"), and Locals 278 and 550 of the United Transportation Union, for summary judgment. For the reasons described herein, the motions are granted in substance. In addition, plaintiff is given leave to amend his complaint to state a cause of action under 45 U.S.C. § 152, Eleventh, within thirty days from the entry of this order.

FACTS

The current record discloses that plaintiff has been employed in various capacities with defendant Conrail and its predecessors since 1968. As such, he was required to be and was in fact a member of defendant UTU since the initiation of his employment. Although the facts are not entirely clear on this matter, plaintiff ceased paying dues to the union sometime in 1976. In February of 1981, plaintiff was informed by union officials that his dues were in arrears. The record does not disclose the result of this conversation. It is clear, however, that the union did not at that time attempt to expel plaintiff from the union or seek the termination of his employment, despite the fact that Article 49 of the union's constitution called for the immediate suspension of membership upon failure to pay dues. In addition, Rule 101 of the collective bargaining agreement between the union and Conrail required the discharge of any employee who was not a member of the union.

In December of 1981, plaintiff was working at the Toledo switching yard, which was under the jurisdiction of Local 550, one of the defendants herein. Plaintiff commenced a one month vacation on January 1, 1982 after which he was to resume work at the Jackson, Michigan yard, which was under the jurisdiction of UTU Local 278, also named as a defendant. Plaintiff had given as his permanent address a location in Onsted, Michigan, but he did not reside or even appear at that address for the duration of the month of January. Plaintiff states that he spent the entire month living with a friend in Toledo.

It was during this month that officials of the UTU decided, for reasons that are undisclosed, to enforce the closed shop provi-

sion of Rule 101. The union directed Conrail to terminate plaintiff's employment because he had failed to pay dues and thus was no longer a union member. Conrail sent a notice of termination by certified mail to the Onsted address, dated January 27, 1982, informing plaintiff that he had 10 days in which to seek a hearing and contest the termination. Unfortunately, plaintiff did not return to the Onsted house until the ten-day period had elapsed. Upon retrieving the letter from the post office, plaintiff immediately contacted Conrail and requested a hearing, but was informed that his request was untimely. The company agreed to grant him an informal audience, in light of his circumstances.

Plaintiff sought the advice of the treasurer of Local 278, Phillip Knapp, who calculated the amount of dues for which plaintiff was in arrearage, some $2,085. On February 13, plaintiff tendered the full amount to Knapp, who accepted the money and issued a receipt therefore. One Scott Cole, the chairman of Local 278, informed plaintiff that there was nothing to worry about, and that it would be unnecessary for a union representative to attend the informal audience that the company had granted to plaintiff.

The informal hearing was conducted on February 18, at which plaintiff presented the reasons for his failure to pay his dues. Plaintiff states that he believed that his union dues were being withheld from his wages, and pointed to a deduction on his weekly earnings statement that was denominated only by a code number. In fact, the deduction pertained to a meal allowance. The company officials determined that plaintiff had not provided them with sufficient grounds for failure to comply with the closed shop provision of Rule 101, and terminated plaintiff's employment. Plaintiff was formally notified of this decision on February 26. The belated dues payment was returned to plaintiff a few weeks later. This lawsuit was not commenced until January 27, 1983.

## DISCUSSION

### Motion of Defendant Conrail

Defendant Conrail moves for summary judgment on the grounds that plaintiff's challenge to Conrail's termination of plaintiff's employment constitutes a "minor dispute", as that term has been defined by the courts, and as such, is not cognizable before this Court. Defendant argues that such a dispute, which involves merely the interpretation of the terms of a collective bargaining agreement between a union and a railroad company, comes within the exclusive jurisdiction of the National Railroad Adjustment Board, or, if the union and the company decide to proceed to arbitration, before the "Public Adjustment Board", 45 U.S.C. § 153 Second. The jurisdiction of the administrative tribunals over this kind of "minor dispute" is exclusive, *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). Defendant Conrail concludes that the failure of the plaintiff herein to proceed with his administrative remedies requires dismissal of this action for want of jurisdiction.

The Court of Appeals for the Sixth Circuit has recently determined that there is an exception to the rule of exclusive jurisdiction in Railway Act cases. In those cases in which an employee joins both the employer railroad and his own union in an action for unfair representation, and when plaintiff further alleges that his failure to exhaust his administrative remedies is due to his reasonable reliance upon the assurances of union representatives that they would diligently handle the administrative claims, and the time period for proceeding with the administrative claims has lapsed due to the failure of the union to prosecute those claims, thereby leaving plaintiff without an effective administrative remedy through no fault of his own, the plaintiff may proceed in a civil action against both the union and the employer in federal district court, *Kaschak v. Consolidated Rail Corp.*, 707 F.2d 902 (6th Cir.1983).

Recognizing that its decision was at odds with those reached in other Courts of Ap-

peal, and seeking to narrow the scope of its holding so as not to offend the jurisdictional boundaries established by the Railway Act, the *Kaschak* court described the stiff requirements for avoiding a motion to dismiss on the grounds of failure to pursue administrative remedies:

> The burden on the plaintiff remains extreme. First Kaschak must establish that his failure to personally request arbitration before the Board was justifiable. He essentially must show that the Union breached its duty of representation by not processing his grievance and that it was reasonable for him to rely on the fact that they would not breach that duty. Only once such an important initial showing is made can the plaintiff proceed to pursue his claim against his employer, where he will then bear the burden of showing that his discharge was contrary to the collective bargaining agreement.

707 F.2d at 913.

■ Although plaintiff has brought a breach of contract/unfair representation claim against the railroad and the union in this case, the Court concludes that plaintiff has failed to meet this burden in this case. Although Mr. Cole initially told plaintiff that he had nothing to worry about prior to the informal audience with the Conrail officials on February 18, the advice of the union officials changed markedly after the company decided to terminate plaintiff. The facts are uncontroverted that all of the union officials with whom plaintiff spoke after he was fired advised him to retain an attorney, and that there was nothing that the unions could do to help him at that point. The Court concludes that any reliance which plaintiff may have placed upon the unions to handle his grievance before the Adjustment Board could not have been reasonable in light of these disclaimers. For the foregoing reasons, the motion of defendant Conrail is granted.

## MOTION OF THE UNIONS CLAIM OF UNFAIR REPRESENTATION

[2, 3] All three union defendants argue that, with respect to those claims that al-lege unfair representation against them, the claims are barred by the six-month statute of limitations identified by the Supreme Court as controlling this kind of an action in *DelCostello v. Teamsters*, —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Although *DelCostello* addressed a breach of contract/unfair representation claim brought under the National Labor Relations Act, several courts that have addressed the issue have concluded that the reasoning of *DelCostello* applies to the context in which the statutory duties are imposed by the Railway Labor Act, *see, e.g., Linder v. Berge,* 567 F.Supp. 913 (D.R.I. 1983). The Court is in agreement with this conclusion, and concludes that the six-month statute of limitations established by § 10 of the Labor Relations Act, 29 U.S.C. § 160(b) and incorporated into the judicially-created cause of action for unfair representation by *DelCostello* applies to unfair representation claims that arise under the Railway Act. For this reason, plaintiff's unfair representation claims, which were not filed for at least ten months after the cause of action arose, are time barred, and as such, dismissed with prejudice.

Plaintiff has also alleged that the defendant unions breached their obligations towards him that arose by operation of the UTU's constitution. Defendants do not contest the jurisdiction of this Court to entertain such a claim, but urge instead that these claims should be disposed of on the merits.

Plaintiff claims that the unions breached their duties to provide him with notice of the fact that his dues were in arrears prior to seeking the termination of his employment; that they failed to grant him admission into the union upon his tendering the full amount of the dues that were owing; and that they failed to represent him at the informal audience, all in violation of certain enumerated provisions of the union constitution. Defendants have conceded that these claims are legally distinct and independently viable apart from plaintiff's

claim of unfair representation that arises under the Railway Labor Act.

■ Plaintiff relies upon Article 49 of the constitution for his claim that he was entitled to prior notice of arrearage before the union moved to have him fired. That article reads as follows:

> The dues and assessments of members shall be paid in advance, before the first day of the month in which they are due. Any member who fails to pay his dues and assessments within the time provided shall be suspended *without notice* or further action (emphasis added).

The Court fails to see how this provision could have created a right to prior notice on the part of plaintiff. The clear language of the passage negates any such right.

■ With respect to his right to representation under the union constitution, plaintiff points to Article 44, which provides:

> The United Transportation Union shall have authority to receive notice of hearings, or to waive hearing, and to appear for, represent, and act for its members before any person, board, or other tribunal in connection with consideration and determination of claims, complaints, or grievance ... except where the member involved serves reasonable written notice on the United Transportation Union to the contrary.

The Court agrees with defendants' construction of the provision as creating a right of the *union* to be present at and act as a representative of its members as against the company, which might be inclined to exclude union representatives from forums in which it was dealing with the individual member. The article does not, by its terms, create any right of the member to be represented by the union. That right, of course, has a statutory and judicial origin, 45 U.S.C. § 152, *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).

■ Plaintiff relies upon Article 51 for his claim that the union was obligated to reinstate his membership upon his tendering the full amount of back dues that were owing. That provision of the union constitution reads as follows:

> A member who has been suspended for nonpayment of dues or assessment *may be readmitted* upon application on proper form and the payment of all money due up to the date of his suspension, plus dues and assessments for the current month and a reinstatement fee of $1.00 (emphasis added).

The Court agrees with defendant unions that this provision does not, by its terms, create a vested right to reinstatement upon submission of back dues. Rather, the language appears to create authority on the part of union officials to reinstate a member who has fallen behind on his payments and who has been suspended as a result of such a lapse. In other words, the article creates a power of forgiveness in the union, and not a right to reinstatement on the part of a delinquent member.

Nonetheless, the Court is troubled by the fact that union officials refused to reinstate plaintiff after the latter had made prompt payment of his arrearage. This refusal persisted despite the fact that the local treasurer, Mr. Knapp, had accepted the payment, and the local chairman, Mr. Cole, had assured plaintiff that the problem had been resolved.

■ It may be true, as the unions argue, that Article 51 creates no right to reinstatement on behalf of a delinquent member. Nonetheless, the union has an obligation to treat its members fairly and equally with respect to its dues collection and membership policies. In particular, a union cannot enforce the dues requirement in a discriminatory fashion against certain members, while other members are allowed to fall behind on their payments for protracted periods with impunity.

The Railway Labor Act permits a union and a railroad to enter into a closed shop agreement such as that which existed between Conrail and the United Transportation Union, 45 U.S.C. § 152 Eleventh. That

statute requires, however, that no such agreement shall impose a requirement of union membership upon employees unless such membership is available on the same terms to all persons. More to the point, although an employee may be denied continued membership for failure to pay dues, the union's policies and practices for collection of such dues must be administered on an even-handed basis with respect to all members:

Provided, that no such agreement shall require such condition of employment with respect to employees to whom membership is not available on the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender periodic dues, initiation fees, and assessments (not including fines and penalties) *uniformly required* as a condition of acquiring or retaining membership. (emphasis added).

45 U.S.C. § 152 Eleventh (a).

This provision has been interpreted to proscribe discriminatory application of a dues collection practice by a union against a member for whom union officials had developed ill will, *Cunningham v. Erie Railroad Company,* 358 F.2d 640 (2d Cir. 1966). In *Cunningham,* the Court concluded that plaintiff had stated a cause of action against the employer railroad for violation of the above-quoted provision by alleging that the union had expelled him for nonpayment of dues, whereas other members, who were as far or further behind in their payments had not been sanctioned. *Id.* at 645. Plaintiff further alleged that the union had taken action against him because union officials were annoyed with him for pressing his claims of violation of his seniority rights after the union had concluded that such claims were spurious and did not deserve the union's attention. The court concluded:

Once it is established, as here, that the expulsion of the worker from membership in the Union was the product of an act of "hostile discrimination" by the Un-

ion, that is to say "for any reason other than the failure of the employee to tender the periodic dues .. *uniformly required* as a condition of acquiring or retaining membership, the Railroad, having discharged the employee on the representation of the Union that he had failed to tender such periodic dues, uniformly required, is automatically liable for wrongful discharge. (emphasis in the original).

*Id.*

There have been unsubstantiated allegations in the arguments accompanying these motions that plaintiff in the instant case was also dismissed from the union, and subsequently fired, for discriminatory reasons. Defendant UTU argued at the hearing on these motions that the delay in suspending plaintiff from the union was occasioned by the failure of the unions to determine, over a period of six years, that plaintiff had not in fact paid his dues, and was not the result of any discriminatory animus towards the plaintiff.

The court in *Cunningham* concluded that plaintiff's claim against the defendant railroad would not be dismissed on the grounds of failure to exhaust administrative remedies, because resort to the administrative tribunal would have been futile in that case, 358 F.2d at 646. This Court concludes that plaintiff herein did not have such good grounds for failure to pursue his administrative remedies against the employer railroad, and therefore cannot assert a claim against the defendant railroad under § 152 Eleventh (a) in this Court.

The Court further concludes that, although all of the claims asserted by plaintiff in his current complaint are infirm for the reasons stated, it will grant plaintiff leave to amend the complaint within 30 days of the entry of this order so as to state a claim under § 152 Eleventh (a) against UTU for discriminatory enforcement of the dues requirement, if plaintiff believes in good faith that facts exist to support such a claim. The Court cautions plaintiff that it will read the cause of action

recognized by the *Cunningham* court as arising under § 152 Eleventh (a) to require a showing of intentional discrimination against plaintiff, and that mere negligent failure to collect dues promptly will not suffice to impose liability on the union.

This case has been marked by a concerted failure on the part of all the defendants to assume responsibility for the decision to fire plaintiff. Counsel for Conrail insisted at the hearing on these motions that, upon being directed by the union to terminate plaintiff's employment for failure to hold membership, they were bound to do so by the terms of the collective bargaining agreement. Counsel for the unions have argued that the unions could not have reinstated plaintiff upon the submission of his back dues, because they did not have adequate records from which to determine how those dues should be allocated among the International and various local unions with which plaintiff was affiliated. Needless to say, the failure of the union to enforce the closed shop provision for several years, and the consequent failure of the union to maintain adequate records to determine how plaintiff's lump sum payment of late dues should be allocated, a matter which is of concern only to the unions in this case, can not fairly be attributed to the employer or the plaintiff. Whether the unions have been fair in their dealings with plaintiff, quite apart from their legal duties towards plaintiff which arose under the terms of the collective bargaining agreement and the Railway Labor Act, is a question which the Court will pose as an initial matter to the unions themselves.

Plaintiff is given thirty days in which to amend his complaint in the manner indicated by the Court. All of the current claims are to be stricken from the amended complaint as infirm for the reasons set forth in this opinion. Partial judgment will be entered against the plaintiff and in favor of Conrail. If the complaint is not in fact amended as proposed, summary judgment will be entered on behalf of all defendants. All trial dates heretofor established are set aside.

SO ORDERED.