**A.W. MOSELEY, Jr.**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY and American Railway Supervisors Association.**

**Civ. A. No. 83–2466.**

United States District Court,
E.D. Louisiana.

Sept. 4, 1984.

ley's former union, the American Railway Supervisors Association ("ARSA") and his one-time employer, SP. Plaintiff's complaint alleges that ARSA breached the duty of fair representation it owed to him and that SP breached its collective bargaining agreement with ARSA covering the Mechanical Department supervisors ("the Agreement"). The essence of plaintiff's complaint is that, by dint of personal favoritism and procedural irregularities in the application of the Agreement's seniority rules, Moseley was forced to surrender his supervisor's position.

All three parties have moved for summary disposition of this matter. The court has before it SP's motion for summary judgment, ARSA's motion to dismiss or for summary judgment, and plaintiff's own motion for summary judgment. In addition, in response to SP's motion for summary judgment, plaintiff has moved for leave to amend his complaint. In its motion, SP contends that plaintiff's complaint is barred by the applicable statute of limitations.[2]

We are presented, therefore, with the question of what statute of limitations applies to an employee's suit against his union and his employer under the RLA. The question is apparently one of first impression in this circuit since the Supreme Court's decision in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), holding that a six-month limitations period applies to identical claims brought under section 301 of the Labor Management Relations Act ("LMRA"). We conclude that actions under the RLA are also governed by the six-month limitations period and that, under the facts of this case, plaintiff's suit is time-barred.

Robert E. Lee, New Orleans, La., for plaintiff.

Joseph Guerrieri, Jr., Monroe, La., John J. Sullivan, New Orleans, La., Robert H. Urann, Metairie, La., for defendant American Ry. Sup'rs Assn.

Raymond J. Salassi, Jr., H. Mark Adams, New Orleans, La., for defendant Southern Pacific Transp. Co.

## MEMORANDUM OPINION AND ORDER

CASSIBRY, Senior District Judge:

A.W. Moseley, a former Mechanical Department supervisor employed by the Southern Pacific Transportation Company ("SP"), filed this action under the Railway Labor Act, 45 U.S.C. §§ 151–188 ("the RLA").[1] Named as defendants are Mose-

---

**1.** According to the complaint, this is also an action arising under the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.*, with jurisdiction "conferred and vested in this Court under 28 USCA, Section 1391(3)." Section 1391 concerns venue, not jurisdiction. No more specific reference to the applicability of Title 49, U.S.C. § 10101, *et seq.* has been made. We note that it is the policy of the United States Government to encourage fair wages and safe and suitable working conditions in the railroad industry, 49 U.S.C. § 10101a(12), and delve no further into this statute. Jurisdiction in this case is proper under 28 U.S.C. § 1331 and § 1337.

**2.** In their answers, both SP and ARSA raised the statute of limitations defense. ARSA, however, has not amplified or renewed this statement in its present motion to dismiss.

## SUMMARY OF EVENTS: THE SENIORITY SHUFFLE

Moseley entered the employ of the railroad at SP's Avondale, Louisiana, facility on September 1, 1978. Initially employed as a carman, he became a probationary car supervisor in March of 1979. Thereafter, Moseley advanced to a regular supervisor's position in the Car Department, establishing a seniority date of May 15, 1980.

A short time later, a vacancy opened in the supervisors' ranks due to the retirement of Car Foreman R.J. Champagne.[3] Rule 7(c) of the Agreement sets forth the procedures to be followed in notifying supervisors of a vacancy.[4] The rule also provides for preferential consideration to be given to applications from "supervisors . . . in service."

At some time after Champagne's retirement, J.L. Springfield made known his intention to resign his position as trainmaster at Avondale and to bump back into the supervisors' ranks.[5] Word of Springfield's interest in the vacant supervisor's position spread among the supervisors on the Car Department seniority list. It was the supervisors' common understanding that

Springfield's seniority ran from March, 1956. In light of the apparent futility of bidding against a man with so much seniority, neither Moseley nor any other supervisor thought to submit a bid for the post. As the only applicant for the job, Springfield received the appointment on September 4, 1980.

Two weeks later, in an apparently unrelated personnel move, a more senior supervisor displaced Ronnie Champagne from his supervisor's position. Pursuant to Rule 8 of the Agreement, Champagne (the son of the Champagne whose retirement kicked off this game of musical chairs) took advantage of his slightly greater seniority and displaced Moseley from *his* supervisor's position.[6]

Left standing when the music stopped, Moseley, as a displaced supervisor, had the option of either displacing a junior supervisor himself or of resigning his supervisor's position and returning to the craft ranks he had so recently left. In connection with the first alternative, ARSA's local representative, A.L. Bourg, informed Moseley that a junior person held a supervisor's position in Ennis, Texas. Moseley was

3. There is some confusion about the exact date of Champagne's retirement. Plaintiff's complaint states that Champagne "resigned" at the end of May, 1980. According to SP, Champagne retired effective June 30, 1980. In either case, the vacancy was not filled until some months after Champagne's retirement. Plaintiff has alleged that this delay violates the requirement that "assignments [be] made as promptly as possible." Complaint, ¶ 6.

4. Rule 7(c) of the collective bargaining agreement between ARSA and SP provides, in pertinent part:

(c) Notification of new positions as Supervisor, and temporary or permanent vacancies occurring in regular Supervisor positions, will be advertised at locations accessible to supervisors by appropriate Company Officer... Assignments will be made as promptly as possible, and in filling such positions preference will be given to qualified Supervisors in the following order:
First: To Supervisors who are in service as such.
Second: To former supervisors who have been (a) cut off, or (b) reduced in rank account force reduction.

Association representatives shall be consulted in connection with such selections. This is not to be construed, however, to delay filling such positions; the Superintendent Mechanical Department and/or division officials to be the judge, subject to appeal.

5. A trainmaster is a carrier official. Under Rule 12 of the Agreement, a supervisor who accepts an official position with the carrier continues to retain and accumulate seniority. A supervisor returning to a position covered by the Agreement may exercise his seniority to displace a junior supervisor within his Division.

6. Rule 8 provides, in pertinent part:
(a) When position of a Supervisor is to be abolished, five (5) working days' advance notice will be given (with copy of authorized representative) and, if qualified (the Management to be the judge, subject to appeal), he shall within that period (or if on leave of absence or vacation, within five (5) days of his return) have the right to displace a junior Supervisor. If a Supervisor so displaced desires to displace a junior Supervisor, he must make known his wishes within five (5) days of such displacement.

qualified for this position and would have had sufficient seniority to bump into it. After traveling to Ennis to consider the move, Moseley chose not to bid on it. Instead, he submitted bids on carman jobs in his home Avondale Yards and bumped back into his former craft. By so doing, he forfeited his supervisor's seniority and ARSA representation.[7]

The first inkling any supervisor had of possible mishandling in connection with the assignment of Springfield to the supervisor's position came in February of 1981. At that time, in accordance with the terms of the Agreement, SP published supervisors' seniority rosters for the Car and Locomotive Departments.[8] Springfield's name appeared on the Locomotive Department roster with a 1956 seniority date, but it did not appear on the Car Department roster. Under Rule 7(a) of the Agreement,

> Seniority of supervisors shall be confined to (1) Locomotive Department or (2) Car Department, and will be systemwide.... Supervisors' seniority will be as of the date they are assigned to a regular supervisor's position.

The rosters indicated that Springfield has been assigned to a Car Department supervisor's position for which he had no seniority. In response to complaints from Locomotive supervisors, ARSA conducted an investigation which established that Springfield had accumulated seniority since 1956 only on the Locomotive Department roster. ARSA representatives next met with SP Labor Relations Officials in order to set the situation right. The meeting produced a written agreement, dated March 31, 1981, preserving the status quo. Springfield was permitted to maintain his Locomotive Department seniority from 1956, keep his new Car Department position, and establish a Car Department seniority date effective from the September, 1980 date when he assumed the position.

Upon learning of this agreement, plaintiff, now a carman, made his dissatisfaction known to both ARSA and SP. On April 24, 1981, he wrote a letter of protest to ARSA General Chairman Braderich with a copy to SP officials. Moseley asked that the award of the job to Springfield be thrown out, the bidding reheld, that he be restored to the Car supervisor's seniority roster with full seniority and that he be compensated for his trip to Ennis, Texas.

In ARSA's opinion, it was under no obligation to take any action on plaintiff's grievance. ARSA head Braderich informed Moseley that, since Moseley was now a carman, he was no longer represented by the supervisors' union. In addition, ARSA considered the grievance to be untimely under Rule 16 of the Agreement, which requires written filing of a grievance within sixty days of the occurrence on which it is based. Nevertheless, the union presented plaintiff's grievance to SP Labor Relations officials.

SP determined to leave the Springfield agreement undisturbed. SP informed ARSA that since Moseley had not bid on the position in question and had voluntarily resigned rather than move to Ennis, Texas, it was SP's position that Moseley did not have a claim under the Agreement. ARSA Chairman Braderich transmitted this decision to Moseley by letter dated June 6, 1981. Braderich added that ARSA now considered the matter closed and would take no further action on his grievance. In other words, ARSA was not prepared to carry Moseley's grievance to arbitration before the National Railway Adjustment Board ("NRAB" or "the Board").

Not content with this decision, Moseley notified ARSA that he would take the matter up with the NRAB himself. On June 3, 1982, Moseley filed a notice of intent to file a claim with the Board. In his claim, Mose-

---

**7.** Under Rule 7(e) of the Agreement, "[s]hould a supervisor voluntarily revert to the ranks of a craftsman rather than exercise his supervisor's seniority accumulated at Shop or Divisions, he shall thereby forfeit all seniority previously established as a Supervisor..."

**8.** Rule 7(f) provides, in pertinent part, "[s]eniority rosters will be revised as of January 31 each year, and posted in the respective supervisors' offices at points affected."

ley accused both ARSA and SP of violation of Rules 7(a) and 7(c) of the Agreement. Further, he charged the union with "failure to properly represent" him and the company with failure to investigate the "non-advertising of the ... seniority list." [9]

After receiving submissions from Moseley and SP, the NRAB dismissed without consideration of the merits. In its opinion of November 9, 1982, the Board stated that "the claim presented to the Board was not filed and progressed in the usual manner on the property as required under Section 3, First (i) of the Railway Labor Act, as amended." Six months and some days later, plaintiff filed this suit in federal court (May 18, 1983).[10]

Preliminaries past, we are ready for the main event, the pinning of a limitations period to plaintiff's suit.

## THE APPLICABLE STATUTE OF LIMITATIONS

Pleonastic though it may be, we reiterate here that this is a railwayman's suit against his union for a breach of its duty of fair representation and against his employer for a breach of the collective bargaining agreement governing the plaintiff. *DelCostello* applied the six-month limitations period of section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), to suits of the same type by steelworkers and teamsters under section 301 of the LMRA, 29 U.S.C. § 185, and the NLRA. 103 S.Ct. 2281. Motivated in part by a desire for uniformity in national labor policy and a conviction that the limitations periods borrowed from ostensibly analogous state statutes was often too short to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights, the Supreme Court selected a limitations period borrowed from an available federal source, the NLRA. Section 10(b) of the NLRA requires charges of unfair labor practices to be brought before the National Labor Relations Board within six months' time. 29 U.S.C. § 160(b). Reasoning that the limitations period in section 10(b) was

---

**9.** The claim filed with Moseley's notice of intent makes the following charges:

*Union Violations:* Violation of Rule 7(a), 7(c) and failure to properly represent claimant.

Violation of Rule 7(a): Union and company permitted one of its members to be on two seniority lists in contravention of said Rule.

Violation of Rule 7(c): Union failed to advertise new vacancy or position in contravention of said Rule.

Willful failure to properly represent or even represent claimant despite being in possession of all the facts and even admitting to same. Union in bad faith by not waiving 60 day rule for filing grievance when the reason for not filing was claimant's lack of knowledge of a seniority list due to non-advertising of same which was due to neglect and/or purposeful ommision (sic) of advertising of seniority lists in connection hereto.

*Company violation:* Same violation of all of the above in addition to relying on claimant's resignation which was a part of the company's decision to consider the above violations only in a cursory fashion. Also there was never an investigation into the non-advertising of said seniority list which is the basis for union's errors and the company's reliance of (sic) same to reach its decision of May 27, 1981.

ORAL HEARING WAIVED.

In his subsequent submission to the Board, Moseley summarized his claim in this manner:

STATEMENT OF CLAIM:

Whether or not the company and the union violated Rule 7(a), 7(c) of the Agreement between said union and said company and if the union failed to properly represent your petitioner, A.W. Moseley, and whether or not the said company and said union together were aware of the above violations but nevertheless permitted petitioner to resign without a proper investigation of petitioner's detailed claim, if, in fact there ever was an investigation into petitioner's claim, thereby raising the question of a conspiracy between said company and said union to use petitioner's resignation as the basis for not considering petitioner's claim in a proper and thorough manner and thereby denying petitioner "Equal protection under the law........" thereby denying him due process of law as provided by the U.S. Constitution.

**10.** In its thrust, Moseley's complaint is essentially identical to his NRAB claim. His conviction that the "long-time" friendship between Bourg, his local ARSA representative, and Springfield motivated Bourg to make misrepresentations about Springfield's seniority does not appear in the complaint. This unsubstantiated suspicion is first voiced in Moseley's affidavit "on information and belief" submitted in opposition to defendants' motions. Since we do not reach the merits of Moseley's claim, we have no need to address the sufficiency of this allegation in generating an issue of material fact capable of withstanding defendants' motions.

designed to accommodate a balance of interests very similar to those at stake in *DelCostello*, the Court concluded that the applicable statute of limitations for actions both against the union and against the employer would be section 10(b)'s six-month period.

Taking the position that the principles enunciated in *DelCostello* carry equal force when applied to suits under the RLA, SP argues that *DelCostello* should also govern this case. In SP's view, plaintiff's cause of action accrued on April 24, 1981, the date of his letter of protest to ARSA Chairman Braderich. Since more than two years elapsed from the date of that letter to the filing of this lawsuit, SP contends that plaintiff's suit is time-barred.

█ *DelCostello*, however, involved actions under section 301 of the LMRA and the NLRA. 103 S.Ct. at 2290. The NLRA, of course, is not applicable to railroad workers. *Raus v. Brotherhood of Railway Carmen*, 663 F.2d 791, 794 (8th Cir. 1981). *See also Sisco v. Consolidated Rail Corp.*, 732 F.2d 1188, 1193 (3rd Cir.1984). Nevertheless, SP urges us to extend *DelCostello* to cover an action under the RLA. In support of its position, SP cites *Linder v. Berge (Linder I)*, 567 F.Supp. 913 (D.R. I.1983). In *Linder I*, the court acknowledged the congruence between actions for breach of the duty of fair representation under the RLA and the NLRA and "perforce" applied *DelCostello* to the case before it. To have done otherwise, the court reasoned, would have thwarted the congressional will, undercut the rationale of the Supreme Court in *DelCostello*, and introduced an "inexplicable asymmetry between railroad workers and other union members in the fashioning of remedies for alleged breaches of essentially the same representational duty." *Linder*, 567 F.

11. Section 3, First (r) reads as follows:
 All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after.
12. As a matter of record, this is not quite accurate. Moseley's original complaint makes no

Supp. at 917. Since all the plaintiffs' contentions arose out of events long predating the institution of their action, the court dismissed the employees' claims against their former union for failure to bring suit within the six-month period established by *DelCostello*.

In *Linder II*, a case neither discussed nor cited by SP, the court considered a similar motion to dismiss by the employer, who had not previously moved for dismissal on limitations grounds. *Linder v. Berge*, 577 F.Supp. 279 (D.R.I.1983). The court found uniform treatment of employer and union to be warranted. Its path to this conclusion was smoothed by the five-year lapse between the accrual of the cause of action and filing of the suit. Therefore, as the court noted, it did not consider the preclusive effect of the expiration of the RLA's two-year limitations period for lawsuits challenging decisions of the NRAB. 45 U.S.C. § 153 First (r). The court specifically stated that the RLA "may well usurp the six-month limitations period of section 10(b) of the NLRA." *Linder II*, 577 F.Supp. at 282 n. 4.

In essence, this is the argument Moseley offers in rebuttal. The RLA expressly provides a two-year period within which to bring actions for review of an adverse decision of the NRAB. 45 U.S.C. § 153 First (r) [11] After quoting this section of the statute, Moseley states, in his opposition memorandum, that the "decision of the Adjustment Board is also the basis for plaintiff's suit in Federal Court." [12] The court takes this statement to mean that Moseley considers the two-year statutory limitations period to be applicable to his suit in its entirety. If two years is the applicable limitations period, the May 1983 filing of this action would be timely.

mention of the NRAB proceeding. In his motion for leave to amend the complaint, Moseley does introduce reference to the action before the NRAB. The motion for leave to amend, however, is a subject under consideration herein and leave has not yet been granted.

■ We examine these contentions in light of the type of claim we have before us. An action for breach of the duty of fair representation and one for breach of the collective bargaining agreement are discrete claims arising from different sources. *See Czosek· v. O'Mara,* 397 U.S. 25, 28, 90 S.Ct. 770, 773, 25 L.Ed.2d 21 (1970). Independent in origin as the two claims are, they proceed to federal court at different paces and along different paths.

■ The union's duty of fair representation was, in fact, first announced in a case arising under the RLA. *Steele v. Louisville & N.R.R.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The duty of fair representation is implied in the union's right to represent all members of the craft and is not grounded on a specific statutory command. *Linder I,* 567 F.Supp. at 196. *See Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). Arising by judicial implication as it does, the duty of fair representation naturally lacks an express congressionally-provided statute of limitations. To fill this void, prior to *Del-Costello,* federal courts borrowed limitations periods from a confusing variety of state statutes, each more or less analogous to the fair representation claim.[13]

■ The second characteristic of the duty of fair representation claim, a characteristic of particular importance in this case, is the exemption it enjoys from the usual requirement that administrative remedies be exhausted before resort is had to the courts. *Czosek,* 397 U.S. at 27–28, 90 S.Ct. at 772–773. As a general rule, before he may bring a duty of fair representation suit, an employee is required merely to exhaust his union's internal grievance procedures. *Clayton v. United Auto Work-*

*ers,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). He need not take his claim to arbitration in a forum for the resolution of disputes between the union and the employer, such as the NRAB. Moreover, the NRAB has no jurisdiction over a duty of fair representation claim and is powerless to order relief against the union. *Raus,* 663 F.2d at 794 n. 7 (citations omitted). An employee wishing to pursue a duty of fair representation claim, therefore, must raise his claim in the District Court.

In contrast, in section 3, First (i) of the RLA, Congress specifically established a step-by-step procedure to be followed in pursuing a claim for violation of a collective bargaining agreement.[14] First, the employee is required to pursue internal company remedies. If these results prove unsatisfactory, either party may present the dispute to the NRAB for arbitration. Only after the NRAB has made its award does the District Court have the power to consider an action based on a breach of the collective bargaining agreement.

■ The District Court does not, however, entertain the suit *de novo.* Under the RLA, the scope of judicial review of a decision of the NRAB is one of the narrowest known in law. *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978); *Air Line Pilots Ass'n Int'l. v. Eastern Airlines, Inc.,* 632 F.2d 1321, 1323 (5th Cir.1980). In order to confer jurisdiction on the District Court, the party seeking review of the NRAB's award must allege one of three grounds for setting aside the Board's order. The award may be set aside or remanded only for (1) failure of the division [of the Board] to comply with the requirements of [the RLA] or (2) for failure of the

---

13. Analogy has been made to actions for the vacation of an arbitration award, legal malpractice and torts in general. *See DelCostello,* 103 S.Ct. at 2291, 2295; *Sanderson v. Ford Motor Co.,* 483 F.2d 102, 114 (5th Cir.1973).

14. Section 3, First (i) provides, in pertinent part: [D]isputes between an employee or group of employees and a carrier or carriers·growing out of grievances or out of the interpretation

or application of agreements concerning rates of pay, rules, or working conditions... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board.

order to conform, or confine itself to matters within the scope of the [Board's] jurisdiction, or (3) for fraud or corruption by a member of the [Board] making the order. As previously noted, review must be sought within two years of the award of the division. Section 3, First (r).

The Supreme Court has recognized, however, that in some circumstances the facts giving rise to the claim against the union and against the employer are inextricably intertwined and it would be senseless to insist on exhaustion of administrative remedies. *DelCostello,* 103 S.Ct. at 2290; *Vaca,* 386 U.S. 171, 87 S.Ct. 903; *Hines v. Anchor Motor Freight Co.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). For the purpose of determining the applicable limitations period, we consider this case to be of the hybrid *Vaca-Hines* variety. Plaintiff would, therefore, be excused from the exhaustion of his administrative remedies. Is it also possible that Moseley may be excused from the time-bar *DelCostello* imposed on suits of the hybrid variety?

In *DelCostello,* after all, the duty of fair representation claims arose only after the unions had taken the employees' grievances to arbitration. This case is different. Here, as in *Vaca,* Moseley's union informed him that it refused to bring his grievance to arbitration. At that point, if he wished to pursue his grievance, Moseley was faced with two alternatives: either file suit in District Court or continue on his own to the NRAB without his union's help. *See, Czosek,* 397 U.S. at 28 n. 1, 90 S.Ct. at 773 n. 1.

■ Moseley chose the second alternative. We have set forth the jurisdictional constraints imposed on either component of the hybrid claim in order to illuminate the barriers facing a plaintiff in Moseley's position. We may assume that Moseley made his choice of forum in the innocent assumption that the NRAB could afford him complete relief. We are also mindful of the congressional preference for the non-judicial resolution of grievances calling for the interpretation of a collective bargaining agreement. We note that Moseley's action arises out of the interpretation and applica-

tion of such an agreement. On its own, his action for violation of the Agreement is the quintessential minor dispute, and as such, a matter for the exclusive jurisdiction of the NRAB. *Elgin, Joliet & E. Ry. v. Burley,* 325 U.S. 711, 722–24, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945). Under the RLA, elaborate administrative machinery has been assembled to arbitrate claims between employees and employers. *See Raus,* 663 F.2d at 794. The narrow scope of judicial review of NRAB decisions implicitly acknowledges the Board's expertise. The District Court will enforce an award without review of the evidence if it draws its essence from the collective bargaining agreement. *Johns-Manville Sales v. Int'l. Ass'n of Machinists,* 621 F.2d 756 (5th Cir.1980). Thus, Moseley may well have believed he was acting in accordance with the dictates of federal labor policy by first exhausting his administrative remedies.

Nevertheless, Moseley's action is primarily one for breach of the duty of fair representation. As we have seen, the NRAB has no jurisdiction over the duty of fair representation claim and, on that score, could not provide Moseley with relief. Thus, Moseley had no alternative but to invoke judicial intervention if he intended to pursue his claim against the union. Our concern is with the possibility that Moseley, or plaintiffs like him, may be put in a position where they are penalized for processing their grievances in accordance with the commonly-recognized policy favoring the non-judicial resolution of minor labor disputes. *See, e.g., Airline Pilots Ass'n,* 632 F.2d at 1323. *DelCostello* itself expressed concern over the employee who is unsophisticated in collective-bargaining matters. 103 S.Ct. at 2291. Implicit in the question before the court is the issue of whether the application of *DelCostello,* in lieu of the RLA, unfairly penalizes a plaintiff with a hybrid claim who fails to effect an early escape, via *Vaca,* from administrative process. Put more simply, does *DelCostello,* in fact, mandate an early resort to the courts?

■ Lest Moseley seem too much a victim of judicial hindsight, we remark on the absence from his original complaint of any mention of the proceedings before the NRAB. Now, in response to the defendants' motions, Moseley has moved for leave to amend his complaint "to set out that the [original] petition is grounded on the adverse decision on plaintiff's complaint by the NRAB; [and] that said complaint filed herein is the identical matter heard by the Fourth Division of the NRAB." Moseley's memorandum in support of his motion to amend states that the omission of any statement concerning the adverse decision of the Fourth Division of the NRAB from the original complaint was "inadvertent." In addition to responding to SP's argument that the statute of limitations has run, Moseley seems to be adding by reference an attack "on the Fourth Division's adverse (sic) to plaintiff's complaint." [15]

■ Thus, the amendment seems to have two purposes. The first is to counter defendants' charge of failure to exhaust administrative remedies. The court is prepared to consider, for whatever purpose it may serve, that Moseley's amended complaint states that the NRAB has already passed on this matter. As we have seen, however, Moseley may, without exhausting his administrative remedies, link a claim against SP for breach of the Agreement to his companion fair representation suit against ARSA. *DelCostello*, 103 S.Ct. at 2290; *Vaca*, 386 U.S. 171, 87 S.Ct. 903; *Hines*, 424 U.S. 554, 96 S.Ct. 1048.

■ Second, the amendment seems to add to Moseley's complaint a claim for review of the NRAB's decision. Yet, not one of the three grounds for review of an award by the Board is alleged or discernible in the proposed amendment. Since the complaint, if amended in this way, would lack a proper statement of jurisdictional basis, the action for review would be subject to dismissal.[16] We, therefore, decline to grant leave to amend.

## APPLICATION OF THE LIMITATION PERIOD

■ Moseley brought his claim to the NRAB on June 3, 1982, three days shy of one full year after the union took its final action on his grievance. After receiving the submissions of the parties, the Board dismissed Moseley's claim as untimely.[17]

---

**15.** Somewhat shortened, the memorandum in support of the motion reads as follows:

"The above numbered and entitled cause arose under the Railway Labor Act as set out in plaintiff's first paragraph in the original petition. However, plaintiff inadvertently omitted from said petition the adverse decision by the Fourth Division of the National Railway Adjustment Board dismissing your petitioner's complaint for which this suit was initiated. Plaintiff's NRAB's complaint is identical with the above numbered and entitled cause. Both defendants in their Memorandum of Law in Support of their Motion for Summary Judgment introduce said NRAB's Fourth Decision award as part of their grounds for dismissal of plaintiff's complaint urging prescription on the grounds that more than two years have elapsed since plaintiff's cause of action arose. However, in 45 USCA 151(r) plaintiff's action has two years to run from the date of the NRAB's adverse decision to file a petition to review said NRAB's dismissal of plaintiff's claim. In this connection, plaintiff's petition was filed timely if this Honorable Court will incorporate by reference this rule, 151(r) as asserting an attack on the Fourth Division's adverse to plaintiff's complaint."

The motion contains no statement of the language to be added to the complaint. In its present form, therefore, the substance of the proposed amendment is too unclear to be evaluated and leave to amend must be denied. *See, Zaidi v. Ehrlich*, 732 F.2d 1218 (5th Cir.1984).

**16.** In connection with the motion for leave to amend, we have reviewed the record of the NRAB proceeding. We find in it no hint of the basis upon which we are being asked to review the award. There is no indication that the Board acted beyond the scope of its jurisdiction or failed to comply with the terms of the RLA. Furthermore, Moseley has not alleged fraud or corruption by a member of the NRAB.

**17.** The NRAB adheres to the terms of the collective bargaining agreement between the parties in determining the timeliness of the petition before it. Moseley's case, therefore, was considered under the agreement between SP and ARSA governing SP's Mechanical Department supervisors. Rule 16 of the Agreement requires that a grievance be presented within 60 days from the date of the occurrence on which it is based. If disallowed, the supervisor or his local representative has 60 days within which to ap-

In the Board's words, the claim was "not filed and progressed in the usual manner on the property as required under Section 3, First (i)" of the RLA. We have no authority to substitute our interpretation of the Agreement for the Board's. *See, e.g., Mason & Hanger v. Metal Trades Council of Amarillo,* 726 F.2d 166, 167 (5th Cir.1984).

We now return to the question before us. Is the two-year statute of limitations of Section 3, First (r) of the RLA applicable to this suit either directly or by analogy?

We are certain that the two-year provision would apply to this putative petition for review. It is equally obvious that it cannot be expressly applicable to a hybrid claim, one half of which arises by judicial, not congressional, action. The NRAB, moreover, has no jurisdiction over the duty of fair representation claim in any form. If the Board did pass on the fair representation claim, grounds would exist for the court to overturn the Board's decision for failure to confine its award to matters within its jurisdiction.

Moseley's argument for a two-year statute of limitations implicitly suggests that the limitations period contained in the RLA applies by analogy. There is, however, a more powerful analogy. There is a closer relationship between hybrid claims under the RLA and the NLRA than there is between a hybrid claim under the RLA, on the one hand, and a petition for review of an award of the NRAB on the other. Moreover, in light of the oft-stated policy in favor of prompt resolution of minor labor disputes by the body most expert in these matters, the disharmony between the two time periods contended for is exaggerated.

In *DelCostello,* the Supreme Court chose section 10(b)'s six-month period in part because it favored ready resolution of disputes without jeopardizing the rights of employees to make the necessary prepara-

tions for their claim. 103 S.Ct. at 2291. In fact, under the Agreement, Moseley had even less time to bring his grievance to the NRAB.[18] This short time period is sanctioned by the RLA and undoubtedly also motivated by an interest in the prompt presentation of claims. *See DelCostello,* 103 S.Ct. at 2292.

Moreover, as we have seen, judicial review of the NRAB's decisions is narrowly circumscribed. None of the three bases for reversal of the Board's award call for a fresh presentation of the facts of the underlying grievance. These facts will already have been aired, at least to some extent, in the parties' submissions to the NRAB. There is nothing in the statute to suggest the two-year limitations period would also be appropriate if the court were expected to hear evidence on the underlying grievance. *See Sisco,* 732 F.2d at 1194. Thus, to transport the RLA's two-year limitations period to the hybrid claim before us is not as consistent with the statute as it might initially have appeared.

 Nor is there any reason to draw a distinction between a duty of fair representation or hybrid claim under the RLA and like claims under other labor statutes. *Welyczko v. U.S. Air, Inc.,* 733 F.2d 239 (2d Cir.1984), *citing Barina v. Gulf Trading and Transportation Co.,* 726 F.2d 560, 563 n. 6 (9th Cir.1984). The source of the duty of fair representation is identical regardless of the type of union involved. *See Sisco,* 732 F.2d 1192, *citing DelCostello,* 103 S.Ct. at 2290 n. 14 (*quoting Vaca,* 386 U.S. 171, 177, 87 S.Ct. 903, 909). The duty of fair representation, it is to be recalled, initially appeared in an RLA suit and was later extended to suits under the NLRA. *Sisco,* 732 F.2d 1191. There is no reason why the *DelCostello* principles, announced against the backdrop of the NLRA, should not reverberate and apply also to suits under the RLA. *Id.* at 1191–92. Nor, in

---

peal the decision to the next highest company official. At the latest, proceedings before the NRAB must be initiated within six months of the decision by the highest officer designated by the company to handle such disputes. We note,

however, that Moseley did not present his claim to the NRAB until the six-month period had expired.

**18.** See note 17, *supra.*

light of the policy favoring a uniform federal standard, should any state statute be selected. *Id.* at 1192; *DelCostello,* 103 S.Ct. at 2293.

An action for review of an NRAB award is a separate and independent cause of action from the hybrid claim Moseley initially presented. The former action is subject to the express two-year limitations period in section 3, First (r). As to the latter claim, we find no reason to treat railroad workers differently from steelworkers, teamsters, or other union members. The interest in a uniform federal standard leads the court to conclude that hybrid suits under the RLA are subject to the same six-month limitations period applied to kindred actions in *DelCostello.*[19]

## RETROACTIVE APPLICATION

■ Having fixed a limitations period, we now consider whether it may be applied retroactively to plaintiff's case. Moseley's cause of action accrued in 1981 and his suit was filed on May 18, 1983, a scant two weeks before the decision in *DelCostello.* The retroactivity of *DelCostello,* however, has been promptly and widely recognized. *Edwards v. Sea-Land Service, Inc.,* 720 F.2d 857, 863 (5th Cir.1983).[20] In *Edwards, DelCostello* was applied retroactively to a hybrid section 301/duty of fair representation suit. These same claims were presented in *DelCostello* and we see no reason why the reasoning of *Edwards* would not apply with equal force to this suit under the RLA. Moseley has not contended that there was clear precedent with regard to his RLA claim nor has he stated that he relied on any. *DelCostello,* moreover, was expressly concerned to limit the belated

raising of claims. Moseley's claim has proceeded in fits and starts from the beginning. He has missed deadlines at every stage.[21]

The only remaining question is whether retroactive application would be inequitable in Moseley's case. Moseley, of course, did not entirely neglect his claim. He presented it, albeit belatedly, to the NRAB for administrative adjudication. We would, therefore, admit that the possibility exists that the filing of a claim before the NRAB could toll the six-month limitations period. Once the Board has made its award, the limitations period would resume running. Tolling during the pendency of an administrative action would protect those union members whose mistaken belief that the NRAB could set right their grievance led them to neglect to file a duty of fair representation claim in federal court. Tolling for administrative action would also be consistent with the preference for non-judicial resolution of minor labor disputes such as Moseley's.

■ Be that as it may, tolling is of no help to plaintiff here. A duty of fair representation claim accrues at that time when a plaintiff either first became or should have become aware of his injury. *Farr v. H.K. Porter Co.,* 727 F.2d 502, 505 (5th Cir. 1984). At the latest, Moseley became aware of his injury and the union's breach when he learned, in June of 1981, that ARSA would pursue his grievance no further. More than six months passed from the date of ARSA Chairman Braderich's letter to Moseley to the time of filing of the NRAB petition. (June 6, 1981 to June 3, 1982.) Even counting from the date of the

**19.** Other courts reaching the same conclusion and applying the principles of *DelCostello* to RLA cases include *Welyczko v. U.S. Air, Inc.,* 733 F.2d 239 (2d Cir.1984); *Hunt v. Missouri Pacific R.R.,* 729 F.2d 578 (8th Cir.1984); *Linder v. Berge,* 567 F.Supp. 913 (D.R.I.1983) and 577 F.Supp. 279; *Solo v. Pan American World Airways, Inc.,* 577 F.Supp. 20 (E.D.N.Y.1984); *Grimes v. Louisville and Nashville Railroad Co.,* 583 F.Supp. 642, (S.D.Ind.1984). *Contra, Henry v. Air Line Pilots Ass'n Int'l.,* 585 F.Supp. 376, 377 (N.D.Ga.1984).

**20.** In considering whether to apply *DelCostello* retroactively to this RLA action, we rely on the three factors set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Edwards,* 720 F.2d at 860.

**21.** ARSA considered Moseley's initial grievance untimely, but presented it to SP anyway. After SP rejected his demands, Moseley took a year to decide to proceed to arbitration before the NRAB. Then, when the NRAB dismissed his grievance, Moseley waited six months more before filing this suit.

NRAB decision, six months and some days passed before this suit was filed. (November 9, 1982 to May 18, 1983.) Thus, by any calculation, this suit is time-barred.

## CONCLUSION

The court concludes that the six-month limitations period established by *DelCostello* applies to this action under the RLA. For the reasons stated above, Moseley's suit is untimely and dismissal is necessary.[22] In light of our disposition on limitations grounds, we need not reach the other grounds for dismissal raised by defendants' motions, nor do we consider plaintiff's own motion for summary judgment. Defendants' motions are hereby GRANTED. Plaintiff's motion for leave to amend his complaint is DENIED. The plaintiff's complaint is DISMISSED with each party to bear its own costs. Judgment to be entered accordingly.

---

**22.** While only SP has raised the statute of limitations defense in these motions, we dismiss the suit against both SP and ARSA. Moseley's hybrid claim is barred by the statute of limitations and there is no need for ARSA to bring a separate motion to dismiss on limitation grounds. *Cf. Linder I,* 567 F.Supp. at 917 n. 4. Untimely as to one defendant is untimely as to the other.